The COMMITTEE ON PROFESSIONAL
ETHICS AND CONDUCT OF the IOWA
STATE BAR ASSOCIATION, Complain-
ant,

v.

Joseph J. BITTER, Respondent.

No. 62917.

Supreme Court of Iowa.

May 30, 1979.

Roger J. Kuhle, Des Moines, for complainant.

Joseph J. Bitter, Dubuque, pro se, and Burns Davison, II, of Jones, Hoffmann & Davison, Des Moines, for respondent.

LARSON, Justice.

This is a proceeding under Court Rule 118.10 to make a final determination upon findings and recommendations of the Grievance Commission. No appeal or statement of exceptions under Court Rule 118.11 were filed by respondent. However, an amicus curiae brief was presented to this court by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association, as complainant, in support of the findings and recommendations, and written responses to the recommendation of the Commission were presented by the respondent. Upon our review, we conclude the respondent shall be suspended from the practice of law for a period of two months.

Court Rule 118.10 provides that this court may revoke or suspend the license of an attorney admitted to practice in Iowa "upon any of the following grounds: conviction of a felony, conviction of a misdemeanor involving moral turpitude, violation of any provision of the Iowa Code of Professional Responsibility for Lawyers, or any cause now or hereafter provided by statute or these rules."

The complaint originally alleged several violations of professional rules which were withdrawn prior to the Commission hearing, and several were found by it to be supported by insufficient evidence. We consider only those matters upon which the Commission found sufficient evidence to support them.

The specific charges now before us include the following: (1) that respondent advanced or guaranteed financial assistance, other than expenses of litigation, in violation of Ethical Consideration (EC) 5–8 and Disciplinary Rule (DR) 5–103(A); (2) that he neglected legal matters entrusted to him in violation of DR 6–101(A)(3); and (3) that he was guilty of "misconduct" under DR 1–102(A)(4), (5) and (6). The Grievance Commission, having found that the evidence supported these complaints, recommended that the respondent's license be suspended for a period of four months. Respondent asks for disposition in the form of probation.

In determining these matters, we give consideration to the Commission's recommendations but are not bound by them, as we review the matter de novo. We independently examine the evidence in the record and enter our disposition of the case. *Committee on Professional Ethics & Conduct v. Sloan*, 262 N.W.2d 262, 268 (Iowa 1978). To establish a violation of a disciplinary rule, the Committee must prove its charge "by a convincing preponderance of the evidence. . . . [T]his requirement is something less than required in a criminal prosecution, and is something more than is required in a civil proceeding." *Committee on Professional Ethics & Conduct v. Kraschel*, 260 Iowa 187, 194, 148 N.W.2d

621, 625 (1967), quoting *In re Morford,* 46 Del. 144, 152, 80 A.2d 429, 432 (1951). If a violation is established, "[s]election of appropriate discipline requires that we consider the respondent's fitness to continue in the practice of law, deterrence of others from similar conduct, and assurance to the public that the courts will maintain the ethics of the profession." *Committee on Professional Ethics & Conduct v. Roberts,* 246 N.W.2d 259, 262 (Iowa 1976).

I. The specific facts alleged in support of the first ground are that Bitter advanced money to three clients, during pending litigation, for purposes other than for the cost of litigation. The respondent does not contest the facts in regard to this charge but seeks by his response to mitigate their effects by showing that he was unaware of the impropriety of the acts, that he did not advance the money to acquire legal business or to collect interest and that the loans were made solely for humanitarian reasons.

At the outset, there is some question which rule should be used to measure the conduct of the respondent under this element. The Iowa Code of Professional Responsibility, adopted October 4, 1971, was conceded by complainant not to have been in effect at the time two of the three advances in question were made by respondent. Complainant, however, relies upon Canons of Ethics then in effect in Iowa and which it claims proscribe this conduct. Canon 10 then provided:

> The lawyer should not purchase any interest in the subject matter of the litigation which he is conducting.

Canon 42 provided:

> A lawyer may not properly agree with a client that the lawyer shall pay or bear the expenses of litigation; he may in good faith advance expenses as a matter of convenience but subject to reimbursement.

The complainant, however, did not allege violations of these Canons in its original petition. An amendment was filed after the hearing and before the decision was rendered alleging violations of the Canons of Ethics as to the two incidents predating our adoption of the Code of Professional Responsibility. We do not pass on the matter of the timeliness of the amendment but conclude the Canons relied upon do not clearly proscribe the acts complained of. Cases are cited by the complainant to show that other courts have held identical conduct to be proscribed by Canons 10 and 42. These cases, however, are not clearly on point; additional allegations in some of them concerning other matters of misconduct make it difficult to determine what amount of culpability, if any, was attached to the fact that the attorney advanced money to his client.

The incident occurring after the date of adoption of the Code and rules under it involve clients named Arnie and Judy Bunkofske, and an advance to them admittedly made by Bitter. The record shows the advance was made in the amount of $986.70, sometime after Bitter had been retained by them in a matter arising out of an accident in which they and their son had been involved. No interest was charged on the advance and there was no evidence that the advance was made in order to obtain employment by the Bunkofskes. Respondent contends he was not aware that his conduct was unethical, and claimed that "[t]he act was done entirely for charitable and humanitarian reasons" to assist his clients who "were in extremely dire financial need."

The rule proscribing such acts, however, makes no exceptions for these factors. It provides that the rule is intended to prevent an attorney's procuring an interest in a legal matter by advancements of money or the like. The rule does not require proof of such intent or effect, only that the conditions exist where such results might reasonable speculation that he has thus in- torney must not, by his actions, give rise to reasonable speculation that he has thus asserted himself into the legal affairs of his potential clients.

We conclude this respondent has violated EC 5–8 and DR 5–103(A) by making advancements for his clients Bunkofskes at a time when litigation was pending and for purposes other than cost of litigation.

II. The complaint alleged also that respondent was guilty of neglecting clients' legal matters, in violation of DR 6–101(A)(3) which provides that:

(A) A lawyer shall not:

.    .    .    .    .

(3) Neglect a legal matter entrusted to him.

The Commission concluded the respondent had neglected clients' work in two particulars, one involving a platting matter under chapter 409, The Code, and the other in regard to extensive probate delinquencies.

In regard to the platting matter, respondent had represented a land developer who sold lots in the development to an independent builder. A title objection was raised in a subsequent sale by the builder, and the sufficiency of the platting procedure was questioned. A replatting procedure was to be completed by Bitter to comply with the title objection; however, he failed to do so despite repeated requests. The title objection was raised in July, 1975, and respondent had failed to comply with the objection as of February 1976, when he was discharged and another lawyer retained.

Although respondent raises several matters in mitigation, including complexity of chapter 409 platting proceedings in general, a "lack of cooperation" of the buyer (suggested to be prompted by the fact he lived there without payment until the title was cleared), and complications caused by the engineer, they do not excuse the delay here.

The other item of alleged neglect arose out of the undisputed fact that as of July 1, 1977, respondent had 26 probate matters which were in a state of "delinquency" under section 633.32, The Code, and concerning which he had previously been sent notices to cure. Thirteen of these had been delinquent for one year, three had been delinquent for three years and two had been delinquent for five years. Shortly prior to the Commission hearing, the total number of delinquencies had been reduced to eight.

Respondent had been repeatedly notified of these delinquencies by the clerk and in February 1975, he was required to meet with a district judge to discuss the matter of the delinquencies. We conclude that the large number of delinquent probate matters, the length of the delinquencies in some of them, and the lack of satisfactory response by Bitter to the notices—both by the clerk and the district judge—to cure the default amount to "neglect" under this rule.

In respect to matters of neglect, each case must obviously be treated individually, and precedents are of little value. However, as bearing upon the matter of rule interpretation and application here, see *Committee on Professional Ethics v. Griffiths*, 262 N.W.2d 264, 264 (Iowa 1978) (dilatory response to title objection); *Committee on Professional Ethics v. Wilson*, 235 N.W.2d 117, 118 (Iowa 1977) (neglect of litigation matters).

The respondent's explanation for the failure to complete pending matters was that he was too busy to properly attend to them. However, his clients deserved to have their legal matters attended to in a reasonably timely manner and the rule involved here makes no exception for respondent's circumstances. Every practicing attorney must make judgments as to priority of matters in progress in his office, all of which are clamoring for attention, and many clients must feel their legal business has been neglected in the process. The rule, however, does not proscribe mere delay—it must amount to "neglect." Application of the rule should require a lawyer to complete legal matters entrusted to him in a reasonably timely manner. If necessary, he should decline additional legal matters if accepting them would result in neglecting pending matters, seek assistance, or disengage himself from these lingering matters and allow another lawyer to complete them. Reasonable adherence to the rule should also involve positive response to the prodding of the district court and its personnel.

Respondent delayed the matters in question beyond a reasonable time; when they were in a serious state of delinquency he apparently did little to extricate himself from the problems even after receipt of

delinquency notices and a conference with the district judge about the delinquencies.

We conclude that these actions by respondent did amount to neglect of legal matters entrusted to him within the meaning of DR 6–101(A)(3).

III. The complaint also alleged that respondent was guilty of "misconduct" under DR 1–102(A)(4), (5) and (6). These rules are stated as follows:

DR 1–102 Misconduct.

(A) A lawyer shall not:

.    .    .    .    .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

Several matters are raised in support of this charge, and which the Commission found to be adequately supported by the evidence. These involve respondent's allegedly adding his name as a payee on a check in his possession, acting improperly in two cases in which he was involved resulting in his removal from them by court order, misrepresenting certain facts to the supreme court in an application for extension of time in an appeal, and acting improperly in regard to transfers of subdivision lots and abstract examinations for them.

(A) The check. Mr. Bitter represented a Ms. Bechen in a personal injury case and in her dissolution. Later, he represented her at the closing of the sale of her home. The real estate agency sent a check from its trust account to Mr. Bitter to be forwarded to his client. While in his possession his name was added as an additional payee.

Respondent admits the addition of his name to the check but denies any recollection of the events preceding it. His secretary testified that when the check came into the office to be forwarded to the client, she brought the matter of Ms. Bechen's unpaid account to respondent's attention.

She testified respondent instructed her to contact the real estate agent to see if he would object to the addition of respondent's name. The agent was out of the office and word was supposedly left with his secretary that he should call back if he objected to the addition; otherwise, the name would be added and the check forwarded the next day. The only evidence presented by the Committee on the placement of the telephone call came from the real estate agent, who testified that he never discussed the addition of respondent's name with anyone. The secretary in the real estate office did not testify.

The complainant contends that Bitter's explanation of the matter "raises several questions as to the character and credibility of the respondent." Several apparent conflicts are shown in his testimony about the event. The Committee's allegation of deceit and neglect arising out of the check incident were not found by the Commission. After discussing the matter, and Bitter's explanation of it, however, it did conclude he had violated DR 1–102(A)(6) in that he was guilty of conduct adversely reflecting upon his fitness to practice law. Even under Bitter's own account, he left his secretary in charge of the matter without adequate instructions or supervision when he knew, or should have known, that the result of its mishandling would reflect adversely upon his ability to practice law. Evidence of respondent's handling of the check incident and doubts raised by his subsequent explanations of it cause us to conclude that the finding by the Commission of a violation of this rule is established by a convincing preponderance of the evidence.

(B) Removal from criminal cases. On July 1, 1977, the Dubuque district court entered orders in two criminal cases, *Berwanger* and *Zenner*, setting them for pretrial conferences at 1:00 p. m. on July 14. Respondent represented both defendants. On the morning of July 14, motions for continuance of the pretrial conferences were filed, respondent stating he would be out of town for a continuing legal education seminar. On July 21, district judge T. H.

Nelson entered an order removing respondent from the two cases, citing past tardiness and "contumacious" conduct and lack of positive response to admonitions by the court as to such matters. The respondent asserts that his earlier motion for continuance of another case set for the same day as these pretrial conferences had alerted the trial judge that he would be gone on July 14, that his secretary was inexperienced in such matters and unaware of the need to hand deliver the motions and that other factors mitigated the seriousness of these circumstances.

We find his reasons for failure to file his motions in a timely manner are inadequate to excuse their tardiness, and that they were the result of poor office management. However, while his conduct here could understandably provide grounds for a court's removal of him as counsel in a case, its "contumacious" nature as characterized by Judge Nelson was not in our opinion of such a nature as to reflect adversely upon his fitness to practice law within the meaning of the rule. Nor do we believe that this conduct was prejudicial to the administration of justice within the meaning of the rule.

(C) Application for extension on appeal. This respondent represented a party in a dissolution matter on appeal. On June 2, 1976, respondent applied to this court for additional time to file his designation of parts of the record. The basis for his request was that he had "not received the transcript as yet because the court reporter is out of town at the present time." Attached to the motion was a copy of the reporter's April 11 letter acknowledging an order for the transcript and a copy of respondent's May 3 letter reminding the reporter that respondent's transcript was entitled to priority because the matter involved a custody dispute. However, a letter from the reporter of May 4, stating that he expected to complete the transcript by the middle of the month, and his May 16 letter informing respondent of its completion were not included with the motion. It is undisputed that respondent did not in fact receive the transcript until June 4 and

that this delay was caused, at least in part, by the reporter's insistence on payment before delivery and respondent's difficulty in communicating with him because of the reporter's frequent absences from the area. The Commission, in finding a violation of DR 1-102(A)(4) (misrepresentation) and DR 1-102(A)(6) (reflection on fitness to practice law) said as to this matter:

> No reason appears why a copy of [the May 16] letter was not attached to the motion, yet certainly if respondent wanted to be completely candid with the supreme court it should have been. Whether the respondent's failure to present all the facts in the motion was the result of haste, oversight or of deliberate intentions, the result is the same: the motion constituted a misrepresentation to the supreme court.

There is nothing in the application for extension of time which is false or affirmatively misleading. It might have been prepared for that purpose but it might also have been the result of oversight as claimed by the respondent. In any event, we believe the Commission applied an overly broad definition of "misrepresentation." Failures resulting from "haste" or "oversight" are not in our view "misrepresentations" within the meaning of DR 1-102(A)(4); nor would they, standing alone, be bases for finding violations of rule 102(A)(5) or (6).

We have said in effect that disciplinary proceedings are special in nature, lying somewhere between civil and criminal matters. We conclude that they are close enough to the latter that we should not apply DR 1-102 to a situation involving mere negligence. The wording of the rule lends support to that conclusion. It proscribes a lawyer's conduct by using such words as "circumventing" a rule and "engaging" in certain conduct. We conclude the rule does not apply to mere negligence, and would not be violated by acts resulting from "haste" or "oversight" as concluded by the Commission, absent other aggravating circumstances. We conclude that the evi-

dence does not support a finding of misrepresentation.

(D) Respondent's involvement in subdivision transfers and title opinions. The Commission found respondent had violated DR 1–102(A)(6) (conduct reflecting adversely on his fitness to practice law) in that he had an apparent conflict of interest in the handling of the transfers of lots in a subdivision in Dubuque known as Hawkeye Estates. One buyer, a builder, contended respondent offered to render title opinions free of charge on the lots purchased by him if he would send other lot purchasers to the respondent. Bitter denied the arrangement for free title examinations but admitted he told the builder that "if he had any buyers that were buying the property, they could perhaps use my original title opinion for him [the builder] in order to save them money on purchasing the lot." At least six title opinions on these lots were rendered by the respondent for the builder. Payment was shown for four of these opinions but no record of payment was found as to the others. Payments received on most of these opinions tend to refute the builder's claim that respondent offered to render free title opinions in exchange for soliciting business for the respondent. In addition, the builder, who sent a letter of complaint to the Dubuque County Bar Association concerning the respondent, did not mention any arrangement for free work. Also, no clients were in fact referred to respondent by the builder. These factors cast doubt on the existence of any arrangement for free legal work. Respondent was guilty of neglect as to the replatting of this subdivision as discussed earlier, but the evidence of the complainant that his conduct also reflected upon his fitness to practice law within the meaning of this rule has not been established by a "clear preponderance" of the evidence.

■ IV. We conclude the evidence has established these violations by the respondent: (a) violation of EC 5–8 and DR 5–103(A) by making advancements for his clients Bunkofskes at a time when litigation was pending and for purposes other than costs of litigation; (b) violation of DR 6–101(A)(3) by neglecting legal matters entrusted to him by failing to complete the replatting matter in a timely manner and maintaining an unreasonably large number of probate delinquencies despite notices and court warnings; (c) violation of DR 1–102(A)(6) (engaging in conduct that adversely reflects on his fitness to practice law) in regard to the addition of his name as payee on the Bechen check.

The Commission has recommended a four month suspension period. This recommendation was based in part upon findings of violations we have concluded were not sufficiently supported by the record. We conclude that some period of suspension is warranted under the circumstances however.

Respondent's license to practice law is hereby suspended for two months and thereafter until such time as his application for reinstatement is approved. Rule 118.12. Respondent shall comply with rule 118.18 regarding notification to clients and counsel of his suspension. This suspension shall apply to and include all facets of the practice of law, including but not limited to examination of abstracts, consummation of real estate transactions, preparation of deeds, buy and sell agreements, contracts, wills, and tax returns. Upon any application for reinstatement respondent shall also prove that he has not performed any of such services during the suspension period and that he has provided the necessary notifications under rule 118.18. Any application for reinstatement shall follow Court Rule 118.13.

LICENSE SUSPENDED.

All Justices concur except HARRIS and McCORMICK, JJ., who dissent.

HARRIS, Justice (dissenting in part).

I agree with the majority opinion except on the question of discipline of the respondent. Under the circumstances, I believe a public reprimand would be sufficient and appropriate.

McCORMICK, J., joins in this dissent.