The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Don W. THOMPSON, Respondent.

No. 68719.

Supreme Court of Iowa.

Jan. 19, 1983.

---

Lee H. Gaudineer and Karen E. Shaff, Des Moines, for complainant.

Robert L. Sikma and Don Sylvester, Sioux City, for respondent.

CARTER, Justice.

This matter is before us for review of the decision of the Grievance Commission of the court recommending disciplinary action against respondent Don W. Thompson. The Committee on Professional Ethics and Conduct filed a complaint charging respondent with several violations of the *Iowa Code of Professional Responsibility for Lawyers.* The matter was heard before the fourth division of the Grievance Commission. On our review of the record, we conclude that serious violations which have been established warrant revocation of respondent's license to practice law.

The commission's burden of proof is to establish by a convincing preponderance of the evidence that respondent has violated the ethical considerations and disciplinary rules of the code of professional conduct. *Committee on Professional Ethics and Conduct v. Brodsky,* 318 N.W.2d 180 (Iowa 1982). Our review of the record is de novo. *Committee on Professional Ethics and Conduct v. Rabe,* 284 N.W.2d 234, 235 (Iowa 1979); *Committee on Professional Ethics and Conduct v. Bitter,* 279 N.W.2d 521, 522 (Iowa 1979). Pursuant to court rule 118.10, we determine anew the appropriate discipline, if any, to be imposed. The Grievance Commission found that certain charges against respondent had not been established. We consider on this review only the following transactions in which the Grievance Commission found a breach of professional conduct had been established.

I. *Failure to File 1979 State Income Tax Return.*

The commission showed that respondent did not file his 1979 state income tax return until May 1981, when he was being audited by the Client Security and Attorney Disciplinary Commission. Respondent explained his failure by saying that when he prepared his 1979 federal return, he computed his state return far enough to know that he did not owe any taxes. He testified that he apparently "relaxed," knowing no tax was due, and then forgot to file the return or ask for an extension.

The commission found that the amount of respondent's adjusted gross income for 1979 was such that he was re-

quired to file a return, and that he knowingly and willfully failed to file his return. Failure to file income tax returns warrants professional disciplinary action. *Committee on Professional Ethics and Conduct v. Roberts,* 246 N.W.2d 259, 262 (Iowa 1976). "[O]ne who is familiar with income tax laws and whose gross income exceeds the sum which triggers the filing requirement impliedly misrepresents that income when he willfully elects not to file. There is an element of deceit involved which . . . impels the conclusion respondent has committed an offense involving moral turpitude." *Committee on Professional Ethics and Conduct v. Bromwell,* 221 N.W.2d 777, 780 (Iowa 1974). In *Bromwell,* the court found a violation of Disciplinary Rule 1–102 although there was no tax owing. We find that respondent, by his failure to file a required income tax return, has violated Disciplinary Rule 1–102(A)(1), (4), (5) and (6).

## II. *Probate Delinquencies.*

The Commission found that in twenty different estates in which respondent was attorney for the personal representative, he neglected to diligently represent his clients. We briefly recount several of these transactions to show respondent's deficiency. In one estate which respondent opened in February, 1967, his last filing was November 30, 1970—an application for distribution. The estate has never been closed. Another estate was opened June 7, 1969, the last filing was September 29, 1969, and respondent has received twenty-five delinquency notices. The estate remains open. Similarly, nothing has been filed since October 1970 in an estate which respondent opened in June 1970. There have been fourteen delinquency notices in that estate, and that estate remains open. In another estate opened in February 1977, the family has had to go to another attorney. Respondent's last filing, a release from state income taxes, was filed in July 1978, with nothing further completed by respondent. Respondent offers excuses for some of the delays in these estates, but he also concedes a lack of diligence on his part.

Considering the large number of delinquency notices received, the length of the delinquencies, and the lack of adequate explanation for these delays, the evidence is clear that respondent "neglected" these matters. Neglect of legal matters entrusted to counsel, within the meaning of Disciplinary Rule 6–101(A)(3), has been discussed in *Bitter,* 279 N.W.2d at 524:

> The rule, however, does not proscribe mere delay—it must amount to "neglect." Application of the rule should require a lawyer to complete legal matters entrusted to him in a reasonably timely manner. If necessary, he should decline additional legal matters if accepting them would result in neglecting pending matters, seek assistance, or disengage himself from these lingering matters and allow another lawyer to complete them. Reasonable adherence to the rule should also involve positive response to the prodding of the district court and its personnel.

Respondent's explanations of his delay are insufficient to either explain or justify his conduct. His failure either to respond positively by working on the estates, or to transfer the estates to an attorney who would complete the work, clearly falls under the proscription aimed at "neglect" in Canon 6. Ethical Consideration 6–4 provides that a lawyer's obligation to his client "requires him to prepare adequately for and give appropriate attention to his legal work." Disciplinary Rule 6–101(A)(3) is violated when there is "indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client.... Neglect usually involves more than a single act or omission." *Committee on Professional Ethics and Conduct v. Rogers,* 313 N.W.2d 535, 536 (Iowa 1981), quoting ABA Comm. on Professional Ethics, Informal Opinions, No. 1273 (1973).

We find respondent has violated Ethical Consideration 6–4 and Disciplinary Rule 6–101(A)(3).

### III. *Trust Account.*

■ The commission found that respondent used his client trust account for both client trust funds and personal funds. The auditor for the Client Security and Attorney Disciplinary Commission testified that his audit showed that respondent had transferred $20,000 in personal funds into the client trust account. Respondent's explanation was that his personal account had been closed by the bank as a result of overdrafts, so he needed an account in which he could deposit his funds. The auditor testified that respondent kept a separate ledger to account for his funds while they were in the account. Nevertheless, there are strict prohibitions against the commingling of funds which occurred. Ethical Consideration 9–5 (commingling of funds of a client and his lawyer should be avoided) and Disciplinary Rule 9–102 (preserving identity of funds and property of a client). *See Committee on Professional Ethics and Conduct v. Pappas,* 313 N.W.2d 532 (Iowa 1981), and *Committee on Professional Ethics and Conduct v. Sturek,* 209 N.W.2d 899 (Iowa 1973). The proscription against such activities is absolute. We find respondent's conduct violated Ethical Consideration 9–5 and Disciplinary Rule 9–102(A).

### IV. *Ralph Prichard Estate.*

By far the most serious of the charges made against the respondent concerns his handling of the Ralph Prichard Estate. Ralph Prichard was respondent's uncle. He died on January 16, 1968, and respondent was designated as executor of his estate. Respondent also assumed the role of attorney for the personal representative.

The estate was opened on February 16, 1968. An inventory was subsequently filed showing an estimated value of $189,841.00. Respondent was one of four beneficiaries of the estate. Each beneficiary was to receive an equal one-fourth share of the ultimate distribution. The other beneficiaries were respondent's brother and two of his uncles (brothers of the decedent). On March 27, 1969, respondent secured an order allowing payment of executor's fees of $3986.92 and also allowing fees for the executor's attorney in like amount. Payment of $7973.84 to respondent and his law firm from estate funds was made on April 16, 1969. No further activity appears on the probate file until October 21, 1974, when a sworn status report and accounting was filed by respondent. This accounting and status report which respondent gave to the other beneficiaries showed equal distributions of $24,843.75 to each of the beneficiaries, including respondent, and a cash balance of $26,435.35 remaining in the estate plus some stocks and bonds. Respondent estimated in this report that the federal estate tax would total $28,000.00, and that the state inheritance tax would total $13,000.00. Respondent assured the court that the estate contained sufficient funds to pay these taxes and that he would personally pay any interest and penalties which had been caused by his dilatory handling of the situation.

These statements made by respondent in the accounting and status report proved to be false. A subsequent audit by the Client Security and Disciplinary Commission established that the cash balance in the estate as of October 24, 1974, was $330.00, not $26,435.35 as respondent had claimed. The audit also showed that disbursements to respondent totaled $49,393.75 by October 1974 whereas distributions to the other three beneficiaries were as follows: O.G. Prichard—$22,237.50; Clyde H. Prichard—$24,988.75; and Jack R. Thompson—$20,843.75 plus an automobile. Subsequent distributions to respondent raised the total amount received by him to $65,718.75. There is no indication that additional distributions have been made to the other three beneficiaries. The Iowa inheritance tax has been paid but there has been no payment of federal estate tax.

### V. *Summary and Disposition.*

■ Without question, the record establishes that respondent breached his professional responsibility as a lawyer in numerous situations each calling for substantial discipline. The most alarming transaction in this regard is the substantial conversion

of client's funds to respondent's own use in connection with his handling of the Ralph Prichard Estate. Our disciplinary decisions have quite consistently held that such conduct calls for revocation of license rather than suspension. *The Committee on Professional Ethics and Conduct v. Pappas,* 313 N.W.2d 532 (Iowa 1981); *Committee on Professional Ethics and Conduct v. Shaffer,* 230 N.W.2d 1 (Iowa 1975); *Committee on Professional Ethics and Conduct v. Rowe,* 225 N.W.2d 103 (Iowa 1975); *Committee on Professional Ethics and Conduct v. Bronemann,* 210 N.W.2d 607 (Iowa 1973); *Committee on Professional Ethics and Conduct v. Sturek,* 209 N.W.2d 899 (Iowa 1973).

Respondent does not dispute his conversion of estate assets. He attributes such conduct to an alcohol problem for which he has subsequently sought treatment. Given the period over which the misappropriation of estate funds occurred and the other substantial breaches of professional conduct by respondent over a prolonged period of time, we deem any discipline short of outright revocation of license to be inadequate. We therefore direct that respondent's license to practice law in this state be revoked.

LICENSE REVOKED.

All Justices concur except REYNOLDSON, C.J., who takes no part.