**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,**

v.

**Greg W. STEENSLAND, Respondent.**

No. 85–1085.

Supreme Court of Iowa.

Nov. 13, 1985.

Frank A. Comito and Patrick W. O'Bryan of Comito & Capps, and Hedo M. Zacherle, Des Moines, for complainant.

Greg W. Steensland, Ames, pro se.

REYNOLDSON, Chief Justice.

This matter is before us for review of the grievance commission's report, recommending disciplinary action against respondent Greg W. Steensland. We find respondent, while serving as attorney for personal representatives in an estate, was guilty of several ethical and Iowa Code violations. We adopt the commission's recommendation that respondent's license to practice law be suspended indefinitely, with no pos-

sibility for reinstatement for a period of six months.

Glen J. Miller, a resident of Story County, died intestate on October 21, 1982. Two of his three children were appointed administrators of Miller's estate. They retained respondent as counsel because he served as Miller's attorney before the latter's death.

The estate consisted mainly of three parcels of real estate. On or about February 4, 1983, a commercial tract was contracted to be sold to Robert L. and Judy P. James, subject to the court's approval, for a total price of $112,500. Consideration was to be paid $1000 in earnest money, $39,000 on possession, and the balance at $750 per month until January 2, 1989, when the balance would be due. The probate file discloses all three heirs executed written consents to the sale. Respondent obtained the court's approval on March 10, 1983. James took complete possession of the premises on April 9, 1983.

June 21, 1983, respondent told the administrators the estate work was one-half finished, the $39,000 was in an interest-bearing escrow account, and his total fee would be $5000. He requested payment of $2500 toward his fee, which the administrators paid him.

On several subsequent occasions respondent assured the administrators that the $39,000, as well as the accumulating $750 monthly payments, were in an escrow account, drawing interest.

February 21, 1984, respondent met with the administrators in his office. He told them certain title objections to the commercial property had been cured, the estate "was very close to being finished," the $39,000 and accumulated $750 monthly payments in the escrow account could be transferred to the estate account, and "he would do it." Respondent identified the escrow account as being in the Union Story State Bank. He then accepted the balance of his fee, in the amount of $2500.

The next morning the uneasy administrators discovered there was no escrow account at the Union Story State Bank. They promptly attempted to stop payment on respondent's fee check, but it had been cashed. Telephone calls to respondent's office went unanswered.

The record reflects that after approval of the commercial property sale in March 1983, respondent did not send the abstract to James' lawyer until July 12, 1983. August 5, 1983, that lawyer mailed to respondent a title opinion identifying several substantial, but curable, title defects. Six months later, in February 1984, respondent finally contacted James' lawyer with respect to those objections. Although the buyers had been in possession since April of 1983, respondent never demanded the money due under the contract from them or their attorney, or made any inquiry concerning these funds, despite his repeated assurances to the administrators. Meetings held between the administrators, respondent, and James' lawyer on February 28 and 29, 1984, confirmed that no escrow account existed, no payments had been made, and the title objections were unresolved.

June 13, 1984, the administrators discharged respondent and hired other counsel. The newly retained counsel discovered decedent's final income tax returns had not been filed, nor had any income tax returns been filed for the estate. A federal estate tax return had not been filed. The final inheritance tax return had not been filed and the probate inventory had to be amended. Fortunately, although all these returns were delinquent, no taxes were payable other than a small amount of Iowa inheritance tax and penalty. The second attorney ultimately cleared the title and consummated the commercial tract sales contract.

Following a hearing upon the committee's complaint, the commission found respondent accepted attorney fees without first obtaining the court's approval; respondent was dilatory and neglected "the duty entrusted in him by his clients by failing to take prompt action in delivering the abstract to buyer's attorney, failing to take prompt action in clearing title problems and failing to promptly prepare and

file documents and tax returns necessary to close the estate"; and respondent misrepresented the existence of an escrow account containing the down payment and later monthly payments. The commission concluded respondent violated Ethical Considerations 1–5, 6–1, 6–4, and 9–6; Disciplinary Rules 1–102(A)(1), (3), (5), and (6); 6–101(A)(1), (2), and (3); 7–101(A)(1), (2), and (3); Iowa Code section 633.198; and Iowa Rule of Probate Procedure 2(d).

■ The principles that guide us in these reviews have been stated recently and will not be repeated here. *See Committee on Professional Ethics & Conduct v. Patterson,* 369 N.W.2d 798, 800 (Iowa 1985); *Committee on Professional Ethics & Conduct v. Shuminsky,* 359 N.W.2d 442, 444–45 (Iowa 1984); *Committee on Professional Ethics & Conduct v. Thompson,* 328 N.W.2d 520, 521 (Iowa 1983). In Iowa, the ethical standards of the code of professional responsibility provide sufficient basis on which to discipline lawyers. *Shuminsky,* 359 N.W.2d at 445.

## I. *Neglect in handling estate.*

The grievance commission's findings are thoroughly supported by the record in this proceeding. Respondent failed to send the commercial tract buyer an abstract for four months. During most of that time the buyer was in possession of the real estate, yet made no down payment or monthly payments to reduce the balance of the purchase price. Respondent made no effort on behalf of his clients to obtain the funds. After he obtained a copy of the title opinion, respondent's efforts to satisfy the objections were dilatory and ineffective. Respondent further failed to prepare the various personal and estate tax returns required to be filed by his clients. Our decisions should have warned him we will not tolerate such flagrant neglect of proper estate administration. *See Thompson,* 328 N.W.2d at 522; *Committee on Professional Ethics & Conduct v. Sylvester,* 318 N.W.2d 212, 212–13 (Iowa 1982); *Committee on Professional Ethics & Conduct v. Rogers,* 313 N.W.2d 535, 536 (Iowa 1981);

*Committee on Professional Ethics & Conduct v. Bitter,* 279 N.W.2d 521, 524–25 (Iowa 1979).

■ We find respondent's conduct constitutes neglect in violation of the Iowa Code of Professional Responsibility for Lawyers, EC 6–1, EC 6–4, and DR 6–101(A)(3).

## II. *Dishonesty and misrepresentation.*

The record shows respondent repeatedly misrepresented to his clients that an escrow account had been established containing the down payment and monthly payments. In fact, no escrow account existed. Further, respondent on a number of occasions misrepresented the progress of the administration of the estate.

■ Our rules clearly establish that "a lawyer should conduct himself in his professional capacity with honesty and truthfulness, and should avoid statements or actions that are calculated to deceive or mislead." *Committee on Professional Ethics & Conduct v. Hurd,* 325 N.W.2d 386, 390 (Iowa 1982). Respondent's statements were dishonest and clearly misled his clients. *See Committee on Professional Ethics & Conduct v. Kelly,* 357 N.W.2d 315, 316–18 (Iowa 1984); *Committee on Professional Ethics & Conduct v. Ryan,* 341 N.W.2d 755, 756–57 (Iowa 1983). It is plain that a charge of violating DR 1–102(A)(4) would have been appropriate in these circumstances, but the complaint fails to list that rule. We do find, however, that respondent violated DR 1–102(A)(1) and (6).

## III. *Acceptance of attorney fees without performing required services or obtaining court authorization.*

■ Respondent concedes he violated the law when he accepted two attorney fee payments of $2500, each without prior court authorization. *See* Iowa Code § 633.-198; *Committee on Professional Ethics & Conduct v. Coddington,* 360 N.W.2d 823, 825 (Iowa 1985). In addition, he had not performed the work required to be done

before such payments could be authorized, in violation of Iowa Rule of Probate Procedure 2(d).

■ In accepting the grievance commission's recommendation of suspension, we have considered the lack of any effort by respondent to account to his clients for the fee he obtained for work he did not do, or to inquire concerning any other estate liabilities or losses due to his neglect. This is a matter we shall review again in the event of an application by respondent for reinstatement of his license.

■ We hold respondent's license to practice law should be suspended indefinitely with no possibility of reinstatement for six months. This suspension shall apply to all facets of the law practice. *See* Iowa Sup.Ct.R. 118.12. Upon application for reinstatement, respondent shall have the burden to prove that he has not practiced law during the period of suspension and that he meets the requirements of Iowa Supreme Court Rule 118.13.

LICENSE SUSPENDED.