COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Richard G. DAVIDSON, Respondent.

No. 86–1429.

Supreme Court of Iowa.

Jan. 14, 1987.

As Corrected Jan. 28, 1987.

Richard G. Blane II, of Hansen, McClintock & Riley, and Norman G. Bastemeyer, Des Moines, for complainant.

Thomas J. Levis, of Scalise, Scism, Sandre & Uhl, Des Moines, for respondent.

NEUMAN, Justice.

The complaint filed in this attorney disciplinary action charged that the respondent, Richard G. Davidson, mishandled the Gladys B. Jones estate and in so doing, "knowingly and willfully made material misrepresentations," "caused false and fraudulent documents to become a part of public record," "commingled and misappropriated estate funds and property," and "knowingly and willfully neglected and failed to diligently carry out his duties as attorney and executor for the estate." After hearing, the Grievance Commission concluded that as a result of respondent's "sloppy handling" of the estate, he should be suspended from the practice of law "for a minimum period." The record before this court reveals a string of deficiencies, improprieties and unethical conduct which compels us to impose a more serious sanction, suspension of his license for not less than two years.

Our review of this case is de novo. Iowa Sup.Ct.R. 118.10; *Committee on Professional Ethics & Conduct v. Bitter*, 279 N.W.2d 521, 522 (Iowa 1979). We give respectful consideration to the commission's findings and recommendations but are not bound by them. *Committee on Professional Ethics Conduct v. Zimmerman*, 354 N.W.2d 235, 236 (Iowa 1984). The burden is upon the committee to prove by a convincing preponderance of the evidence that the respondent has violated the Code of Professional Responsibility as charged. *Committee on Professional Ethics & Conduct v. Lawler*, 342 N.W.2d 486, 487 (Iowa 1984).

We shall briefly recite the facts giving rise to this complaint, followed by a more detailed examination of the facts as they become pertinent to the twelve specific instances of ethical misconduct charged by the committee and addressed by the commission.

In 1974, respondent Davidson prepared the last will and testament of Gladys B.

Jones. When Mrs. Jones died in November 1979, the will was admitted to probate and, in accordance with the wishes of the testator, Davidson was appointed both executor and attorney. Letters of appointment were issued January 14, 1980.

By its terms, the will bequeathed the sum of $8000 in cash plus certain jewelry and other personal property to a number of individual beneficiaries. The balance of the estate (approximately $350,000) was to be placed in a trust for the building of a civic auditorium in Shenandoah, Iowa. Anticipating that additional funds would be necessary for the construction of this facility, the will gave the city of Shenandoah a period of two years after the testator's death to raise the necessary funds and thereafter, for a period of three years, planning and fund raising would become the responsibility of a tax exempt, non-profit corporation. If sufficient funds were not raised within five years, the trust funds would pass to a local hospital.

Three trustees were appointed and a committee of Shenandoah citizens was organized to coordinate fund raising and building plans. Robert Tyler was the only trustee actively involved in this process. The committee was assisted by Shenandoah city attorney Robert Norris. Within the initial two year period, the city determined that it could not assume financial responsibility for the project. Nevertheless, Norris continued to assist the citizens' committee. Attention then focused on the importance of establishing a non-profit corporation in accordance with the will.

Meanwhile, respondent Davidson proceeded with the probate of the estate, filing a preliminary inheritance tax return, obtaining court orders for compensation and sale of certain property, and making two minor distributions to the trustees for preliminary feasibility and architectural studies.

In late spring 1982, trustee Tyler requested that city attorney Norris inquire about the status of the probate proceedings. Much to his surprise, Norris discovered that the estate had been closed and

the fiduciary discharged on February 4, 1982, all without notice to the beneficiaries or the filing of an accounting of any kind. He brought the matter to the attention of the court and subsequently, a hearing was held which resulted in the reopening of the estate, the removal of Davidson as executor and attorney, and the appointment of Sanford Turner as successor executor. As will be detailed later in this opinion, numerous procedural irregularities came to light before the estate was finally closed.

Throughout the probate proceedings in district court and before the grievance commission, Davidson has maintained that his closing of the estate was entirely inadvertent and that the press of a busy law practice caused him to neglect the obvious need to rectify the mistake once it came to his attention. He argues that his neglect, though inexcusable, did not rise to the level of ethical misconduct for he never had any intention of benefiting personally from the many errors which have become apparent. He relies on our opinion in *Committee on Professional Ethics & Conduct v. Bitter*, 279 N.W.2d 521, 526 (Iowa 1979) for the proposition that mere negligence resulting from haste or oversight would not constitute a violation of DR1–102(A)(4). Were this a case of mere haste or neglect, the comparison might be appropriate. The following discussion, however, reveals a case more akin to *Committee on Professional Ethics & Conduct v. Zimmerman*, 354 N.W.2d 235, 237 (Iowa 1984) (want of disclosure constituted misrepresentation within the meaning of our disciplinary rules) and *Committee on Professional Ethics & Conduct v. Steensland*, 376 N.W.2d 615, 618 (Iowa 1985) (flagrant neglect of proper estate administration).

Furthermore, we cannot overlook the numerous ethical violations Davidson committed. *See Committee on Professional Ethics & Conduct v. West*, 387 N.W.2d 338, 342 (Iowa 1986). We turn now to the twelve specific allegations of misconduct.

1. *Misrepresentation in claim for compensation filed October 21, 1980.*

On May 2, 1980, Davidson applied for, and received, an order compensating him

for services rendered the estate (including preparation of the federal estate tax return and Iowa inheritance tax return) from November 13, 1979 to May 19, 1980 totalling $5616. Five months later, on October 21, 1980, he filed a second claim for compensation which was allowed in the sum of $5209.18. This verified claim, which was undated but did not suggest a request for advance fees, recited that among the services performed was "preparation of preliminary final report, order, final report and order." In fact, Davidson readily admits that these reports were not prepared until January 1982.

Iowa Rule of Probate Procedure 2(d) provides that "[o]ne half of the fees for ordinary services may be paid when the federal estate tax return, if required, and Iowa inheritance tax return, if required, are prepared.... The remainder of the fees may be paid when the final report is prepared and the costs have been paid." It is apparent that the rule is silent as to when claims may be made for services not yet performed. It is undisputed in this record that Davidson did not receive the compensation allowed on this second claim. Although the committee argues that the format used by Davidson suggested completion of work not yet performed, a deliberate attempt to mislead the court, we concur with the commission's conclusion that Davidson's actions did not strictly violate either the probate or disciplinary rules.

2. *Misrepresentation and misappropriation of funds re: claim for compensation filed November 13, 1981.*

Davidson's third claim for compensation was presented to the court and allowed on May 11, 1981. This claim was for $2504 and represented fees and expenses to be paid in advance "to establish a non-profit corporation under Section 501(c)(3)" including a trip to the internal revenue service in St. Louis, Missouri. Davidson collected the payment but did not make the trip to St. Louis until June 1982. The testimony before the grievance commission and the findings of both Judge Keith Burgett and Judge J.C. Irvin point to the fact that

Davidson had been neither hired nor authorized by the trustees to form the non-profit corporation and that prior to his departure he had been advised by both city attorney Norris and Judge Burgett to take no further action in regard to the matter. In view of the fact that this trip and these fees were incurred *after* the inexplainable closing of the estate and *after* the hearing on Davidson's removal as fiduciary, the inescapable conclusion to be drawn is that Davidson only took the trip to justify fees already collected.

This action by Davidson, seeking approval by the court for compensation for services never requested by the trustees nor authorized by the will of Gladys B. Jones, constitutes a blatant misrepresentation to the court in violation of EC1–5 and DR1–102(A)(1), (4), (5) and (6).

Not only did Davidson's actions in this regard constitute misrepresentation, they resulted in a misappropriation of estate funds. Beyond the obvious question of why the estate should bear expenses rightfully chargeable to the trust, the record revealed that Davidson never secured the tax exempt status, a task which Norris eventually accomplished through the I.R.S. office in Chicago, not St. Louis. Furthermore, the articles of incorporation filed by Davidson in July 1982, *after his removal as fiduciary*, had to be redone by Norris. All in all, Davidson's time and expense were of no benefit to the estate and served only his personal interest. The fact that Davidson has repaid these funds to the estate does not negate his egregious conduct. We concur with the commission that his misappropriation of funds violated DR1–102(A)(1), (4), (5) and (6). *See Committee on Professional Ethics & Conduct v. Shifley,* 390 N.W.2d 133, 134 (Iowa 1986).

3. *Failure to give notice of sale of real estate.*

4. *Failure to obtain court order for sale of personal property.*

Davidson concedes that he obtained court approval for the sale of real estate owned

by the decedent without first serving notice on "all persons interested" in accordance with Iowa Code section 633.389 (1983). Davidson believed that as executor he was given a power of sale under the will. The will provided that the executor shall have the same powers granted to the trustees. The trustees have sole discretion relative to the sale of "principle assets."

Although we conclude that the better practice under a will whose terms are as vague as the foregoing would be to give notice to all interested persons (especially the trustees), we do not find Davidson's action violative of the statute or the code of professional responsibility.

Similarly, Davidson's sale for $1575 of jewelry appraised at $5150, without court order and based on a questionable power of sale, certainly raises the question of whether Davidson handled the matter entrusted to him with the proper preparation as required by EC6–1 and EC6–4. However, we find the evidence insufficient to sustain a finding of violation of DR6–101.

5. *Commingling of client funds in law office operating account.*

On November 11, 1980, a cashier's check for $22,890 payable to Davidson as executor of the Gladys B. Jones estate was deposited in Davidson's office checking account. Six days later, a check for $22,500 was drawn on the office account and deposited in the estate trust account. The balance of $390 remaining in Davidson's office operating account was not returned or delivered to the successor executor until two years later when an audit revealed the discrepancy.

DR9–102(A) specifically prohibits the commingling of client funds with the funds of an attorney or law firm. The commission, while finding Davidson technically guilty of a violation of DR9–102(A), attributed the violation to office staff error and excused Davidson because no intent to harm the estate was proven. Evidence of stricter office accounting practices convinced them that such an error was not likely to recur.

We are not as eager as the commission to lightly dismiss this violation. The pro-

scription against commingling is absolute. *Commission on Professional Ethics & Conduct v. Thompson,* 328 N.W.2d 520, 523 (Iowa 1983). The reason for the rule is clear: commingling not only makes client's funds available for personal use by the attorney but subjects those funds to the claims of the attorney's creditors. Despite the apparent lack of culpability by Davidson in this instance, his negligent office practices concealed the error and exposed his client's funds to this unacceptable risk for two years. Such a practice violates not only EC9–5 and DR9–102(A) but also his responsibility under EC9–6 to avoid even the appearance of impropriety.

6. *Failure to comply with Iowa probate code requirements concerning final report.*

7. *Misrepresentation to the court in submitting false information in final report.*

8. *Misrepresentation in submitting for signature an order containing false information.*

9. *Failure to appropriately and timely notify the court of the misrepresentations once the occurrences became known.*

10. *Allowing the final report, which was known to contain misrepresentations, to be filed and failing to take precautions to prevent such filing.*

11. *Allowing the final order closing the estate, which was known to contain false information, to be filed and failing to take appropriate precautions to prevent such filing.*

All six of the foregoing allegations of misconduct stem from the central event triggering this entire investigation: Davidson's inadvertent closing of the Gladys B. Jones estate in February 1982. Preliminarily we note that the grievance commission and the court might have excused such an obvious professional error had it not been for the inexcusable and unprofessional conduct which followed.

On February 4, 1982, Davidson submitted for the court's approval documents

he thought to be the preliminary final report and order in the Gladys B. Jones estate. It was his practice not to file signed orders immediately but to take them across the street to his office for copying before being filed later by office staff. As he was leaving the courthouse, he glanced at the Jones estate papers and realized that the documents presented to the court were actually a final report and order which closed the estate and discharged the executor. The final report clearly failed to comply with the requirements of the probate code and section 633.477(1), (3), (7), (8) and (9) in that it failed to describe real estate owned by the decedent; failed to recite her marital status; did not indicate whether any distributees were under a legal disability; and failed to identify the trust beneficiaries. What is more, the unverified report contained no accounting nor any waiver of notice or accounting by the beneficiaries. The order, finding compliance with all the statutory requirements, was clearly inaccurate.

Although the mistake was readily apparent to Davidson before he even left the courthouse, he compounded the error by failing to immediately alert the court to his mistake. Instead, he returned to his office and angrily advised his secretary not to file the documents. Nevertheless, they were filed by someone on his staff seven days later.

Davidson became aware of the unintended filing sometime in March 1982. Incredibly, he still took no action to bring the error to the court's attention. He claims that he contacted trustee Bob Tyler about the mistake in an effort to reopen the estate. The grievance commission and this court, however, find the credible evidence to be that Davidson contacted neither Tyler nor the court until after he had been served with an order to appear and show cause in June 1982.

In summary, the record is uncontroverted that Davidson filed a final report with the probate court that totally failed to comply with the statutory requirements for a final report in an estate. Such negligent handling of a client's affairs clearly violates EC6–1, EC6–4 and DR6–101(A)(2) and (3). By failing to immediately notify the court of his negligence and therefore allowing the inaccurate documents to remain on file, Davidson not only misrepresented the true facts regarding the estate but engaged in conduct prejudicial to the administration of justice and that adversely reflects on his fitness to practice law, all in violation of DR1–102(A)(4), (5) and (6).

Davidson argues that his conduct was not unethical, just negligent. However, in *Committee on Professional Ethics & Conduct v. Hurd*, 325 N.W.2d 386, 390 (Iowa 1982) and again more recently in *Committee on Professional Ethics & Conduct v. McGrevey*, 395 N.W.2d 894, 896 (Iowa 1986) we held that an order signed by the district court is no longer a private paper and an attorney has an obligation to disclose to the court any inaccuracies which it may contain.

12. *Failure to turn over to the successor executor all estate property.*

By court order dated July 9, 1982, Davidson was removed as executor and ordered to turn over to the successor executor all estate property in his control in accordance with section 633.70 and Iowa Rule of Probate Procedure 1.

Iowa Rule of Probate Procedure 1, which implements section 633.70 of the probate code provides that "[T]he fiduciary so removed shall turn over all personal property, money or securities to or for his successor at the clerk's office within five days after such order is filed."

The record made before the commission reveals that jewelry, a small amount of money and an abstract were not delivered to the successor executor until June 1984, nearly two years after the turnover order. The commission found that other minor items of personalty, including another abstract, were not delivered until June 1986.

Davidson's failure to comply with the court's order and the foregoing statutory requirements breached EC1–5 and DR9–102(B)(4).

*Conclusion.*

The integrity of our system depends upon the unquestioned honesty of attorneys dealing with judges. The record in this case clearly reveals that Richard G. Davidson, however heedless or unintentional his actions may have been, breached that trust.

We have reviewed our recent decisions involving one or more of the ethical violations substantiated here to determine the severity of the sanction to be imposed. *McGrevey,* 395 N.W.2d 896; *Professional Ethics & Conduct v. Hurd,* 375 N.W.2d 239 (Iowa 1985); *Steensland,* 376 N.W.2d 615; *Committee on Professional Ethics & Conduct v. Coddington,* 360 N.W.2d 823 (Iowa 1985); *Zimmerman,* 354 N.W.2d 235; *Hurd,* 325 N.W.2d 386. We conclude that Davidson's numerous violations, taken together, warrant a two year suspension.

We order that Davidson's license to practice law in the courts of this state, as that term is defined in Iowa Supreme Court Rule 118.12, be suspended indefinitely with no possibility of reinstatement for two years from the date of filing this opinion. Upon application for reinstatement the respondent must prove he has not practiced law during the suspension period and has otherwise complied with those restrictions which our rules place upon suspended attorneys.

LICENSE SUSPENDED.

All Justices concur except REYNOLDSON, C.J., and LARSON, J., who take no part.