COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

Carroll King BATSCHELET, Respondent.

No. 86–1716.

Supreme Court of Iowa.

March 18, 1987.

*duct v. Jackson,* 391 N.W.2d 699, 699 (Iowa 1986).

James E. Gritzner of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

Carroll King Batschelet, Guthrie Center, pro se.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

WOLLE, Justice.

In August of 1986 the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) charged respondent Carroll King Batschelet with professional misconduct in his representation of several executors and administrators. In addition, the committee alleged that respondent had not cooperated with the disciplinary authorities investigating his conduct. The Grievance Commission (commission) found that respondent had violated several provisions of the Iowa Code of Professional Responsibility for Lawyers and recommended in its report a six-month suspension of respondent's license to practice law. That report is now before us for review and final disposition. *See* Iowa Sup.Ct.R. 118.10. We agree with the commission's findings and recommendation. We suspend respondent's license to practice law indefinitely, with no possibility of reinstatement for six months from the date of this decision.

■ The committee has the burden to prove its allegations of misconduct by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Davidson,* 398 N.W.2d 856, 856 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Fugate,* 394 N.W.2d 408, 408–09 (Iowa 1986). While we are not bound by the commission's findings and recommendations, we give them respectful consideration during our de novo review of the record. *Davidson,* 398 N.W.2d at 856; *Committee on Professional Ethics & Con-*

## I. *Inattention to Legal Work.*

■ Respondent admitted in responding to the committee's discovery requests, and again at trial, that he had received notice of probate delinquencies in twenty estates and one conservatorship that he had opened. Respondent was the designated attorney in those probate matters which date back to as early as 1972. All but four of those estates remained open at the time of the hearing before the commission. Respondent had been delinquent in performing his responsibilities on at least one occasion while handling each of those twenty-one files; in one probate estate he had received eighteen separate delinquency notices.

At the hearing respondent attempted in several ways to explain his inattentiveness to these probate matters. Although he attributed the delay in several instances to difficulty in getting necessary information and the insufficiency of estate funds, he conceded that most of the estates remained open simply because he had not taken the time to complete and close them. He testified that several of the delinquent estates involved friends who had been longtime clients and also some family members, but he did not contend his relationship to those clients should make any real difference regarding his duty to handle the matters competently and expeditiously.

Respondent suggested that in more than one situation uncertainty about the applicable law caused him to be dilatory in closing an estate. He acknowledged, however, that he had neither sought help from other attorneys nor requested that the court consider granting temporary relief from the problems which triggered the delinquency notices. Questioned about his failure to cure the delinquencies, respondent gave a candid though entirely unsatisfactory answer:

I guess the idea never came to mind honestly. I thought I would try to do better as time would go by.

Procrastination was apparently the fundamental disease that infected respondent's practice, as revealed in his closing statement to the commission:

> I would like to visit with the Commission just a little bit to say maybe how we get here, but I try day by day just to do whatever has to be done the most that day. I'm sure that's how the delay happens on these things. People come in, and they have to have the abstract continued or examined or deed prepared and that sort of thing. Obviously, why, then the estate proceedings do suffer because they can wait another day, and that goes from day-to-day too long.

The public in general and respondent's clients in particular were entitled to diligent handling of these probate files, not postponement to "another day" while other clients were accommodated.

In *Committee on Professional Ethics & Conduct v. Bitter*, 279 N.W.2d 521 (Iowa 1979), we explained the options available to lawyers who find themselves unable to keep up in their work: (1) they can "decline additional legal matters if accepting them would result in neglecting pending matters"; (2) they can "seek assistance"; or (3) they can "disengage ... from these lingering matters and allow another lawyer to complete them." 279 N.W.2d at 524. Unfortunately respondent failed to heed those suggestions, apparently because his reach exceeded his grasp. Respondent insisted on continuing as the only attorney performing probate work for his friends and relatives even though he continually failed to perform the work in a prompt and satisfactory manner.

A convincing preponderance of the evidence supports the commission's finding that respondent irresponsibly neglected these probate and conservatorship estates involving legal work entrusted to him by his clients. Respondent's conduct violated several ethical considerations and disciplinary rules set forth in the Iowa Code of Professional Responsibility for Lawyers: EC 1-5 (lawyer must maintain high standards of professional conduct), EC 6-1 (lawyer must act with competence and proper care in representing clients), EC 6-4 (lawyer must prepare for and give attention to legal work), DR 6-101(A)(3) (lawyer must not neglect a legal matter entrusted to him), and DR 7-101(A)(2) (lawyer must not intentionally fail to carry out a contract of employment). *See Committee on Professional Ethics & Conduct v. Stienstra*, 395 N.W.2d 638, 640 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Free*, 394 N.W.2d 373, 374 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Bromwell*, 389 N.W.2d 854, 857 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Blomker*, 379 N.W.2d 19, 22 (Iowa 1985); *Committee on Professional Ethics & Conduct v. Steensland*, 376 N.W.2d 615, 618 (Iowa 1985); *Committee on Professional Ethics & Conduct v. Martin*, 375 N.W.2d 235, 237–38 (Iowa 1985).

### II. *Failure to Cooperate.*

Before the committee filed its formal complaint with the commission, it provided respondent written notice of its investigation regarding the probate delinquencies. When respondent failed to contact the committee and seemingly paid no attention to the letter, a second written notice specifically advised respondent that a formal complaint might be filed regarding his failure to respond and cooperate with the committee and its investigation. Again respondent ignored the committee's request for information. At the hearing, respondent said he did not answer the written inquiries because he "thought it would accomplish nothing."

In not responding to the committee's notices and investigative requests, respondent violated two disciplinary rules, DR 1-102(A)(5) and DR 1-102(A)(6). *Committee on Professional Ethics & Conduct v. Horn*, 379 N.W.2d 6, 9 (Iowa 1985); *accord Committee on Professional Ethics & Conduct v. Megan*, 402 N.W.2d 432, 434 (Iowa 1987); *Stienstra*, 395 N.W.2d at 639; *Free*, 394 N.W.2d at 374; *Bromwell*, 389 N.W.2d at 857.

### III. *Disposition.*

We agree with the commission's recommendation that respondent's license to

practice law in Iowa should be suspended indefinitely with no possibility of reinstatement for six months from the date of the filing of this opinion. Any application for reinstatement shall be governed by court rule 118.13, which provides:

> An application for reinstatement from any suspension shall be filed with the clerk of this court not more than sixty days prior to expiration of such suspension or time fixed for making application therefor in accordance with the provisions of court rule 117. In addition thereto the applicant shall state, in said application, that he or she has complied in all respects with the orders and judgments of this court relating to the suspension. The applicant shall also submit to this court satisfactory proof that he or she, at time of the application, is of good moral character and in all respects worthy of the right to practice law.

In any such application for reinstatement respondent shall also submit satisfactory evidence that he will put in place, use and maintain office practices that will assist him in performing future work in a timely manner, thereby assuring future clients that he will not be delinquent in the handling of matters they entrust to his care.

LICENSE SUSPENDED.