## COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

### v.

### Frank THOMAS, Respondent.

### No. 86–689.

### Supreme Court of Iowa.

### Aug. 20, 1986.

James E. Gritzner, and Hedo M. Zacherle, Des Moines, for complainant.

Frank Thomas, Des Moines, pro se.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LARSON, and CARTER, JJ.

CARTER, Justice.

This disciplinary proceeding presents no factual dispute. Respondent, Frank Thomas, is an attorney admitted to practice in this state in January, 1975. From May, 1975, until March, 1979, he was employed as a staff attorney in the Citizen's Aide Office, a state agency. While so employed, he was entrusted with a sum of money which rightfully belonged to four foreign nationals who were distributees of a decedent's estate. The Citizen's Aide Office had undertaken the task of assisting the executor in the proper transfer of these distributions to the foreign countries where the distributees resided.

While respondent was working on this project, he converted $2021.24 of the $7684.95 involved to his personal use to pay expenses of his family and his parents. The Grievance Commission which heard the complaint recommended that respondent's license be suspended. After a careful review of the facts, we are convinced that the

proper disposition should be revocation of respondent's license.

Sometime in 1976, the Citizen's Aide Office was enlisted by the Governor to assist the executor of the estate of Jenoe Rajbar, being probated in the Iowa courts, in transferring funds to four distributees who were foreign nationals. This project was assigned to respondent. On March 1, 1977, the executor entrusted a check drawn on estate funds in the amount of $7684.95 to respondent. This represented the distributions to be made to Jozef Rajbar, Marija Rajbar, Bela Rajbar and Elizabeth Rajbar. The distributees were citizens of Argentina, Uruguay, and Yugoslavia. Respondent deposited these funds in a Des Moines bank account over which he had complete control.

In April, 1977, he completed distributions totaling $5663.72 to Jozef Rajbar, Marija Rajbar and Bela Rajbar through the offices of the appropriate foreign consulates. The distributee of the remaining $2021.24 was to be Elizabeth Rajbar, but investigation indicated that she was deceased and that her share rightfully belonged to Bela Rajbar, a citizen of Uruguay. During the time that Bela Rajbar's entitlement to the deceased distributee's share was being confirmed, respondent converted the remaining funds to his own use. This occurred by withdrawals from the account at various times between April and December of 1977.

On March 5, 1979, respondent wrote a Davenport attorney who was assisting in distribution of the decedent's estate and advised him that Elizabeth Rajbar's share had been distributed to Bela Rajbar but that, although respondent had a receipt from the Uruguayan consulate for the first distribution to Bela, that office refused to give him a receipt for the second distribution involving Elizabeth's share. The letter advised that "[a]pparently Stungevicius [the Consul] felt that the previous Receipt and Waiver for Bela satisfied that requirement." In July, 1982, the Uruguayan Consulate's Office in New York inquired on behalf of Bela Rajbar with respect to why the latter had not received Elizabeth's share of the distribution. By this time respondent was no longer employed in the Citizen's Aide Office but was an assistant attorney general working in the Consumer Protection Division. He wrote the Uruguayan Consulate in New York on July 29, 1982, and advised that because of changes in personnel in the Citizen's Aid Office he was the only person available who had knowledge with respect to the "rather complex" transactions which were involved and requested that all further correspondence on the matter be directed to him. This letter further indicated

[f]unds were distributed through Uruguayan Consulate for Bela Rajbar as well as additional funds distributed to Bela as a result of a document issued for providing him with funds from his deceased sister.... It occurs to me that there may be some confusion relating to what went on but the documents enclosed should be self-explanatory and would hope that this will be sufficient for you to advise your citizen.

By October of 1984, this matter still had not been resolved to the satisfaction of the Uruguayan Consulate, and its Chicago office was corresponding with respondent on the matter. On October 23, 1984, respondent answered that correspondence as follows:

The funds were eventually distributed to each heir. Bela Rajbar received two shares of the estate—one through your office and the other sent directly to him.

The heirs were: Bela, Elizabeth, Marija and Jozef. After the initial distribution to all but Elizabeth we received a letter and testamentary document purporting to transfer Elizabeth's share to Bela.

As you had supplied me with the address of Bela the funds were sent directly to him.... Once the funds arrived in Uruguay, I have no knowledge of what transpired with them.

I notice that Bela Rajbar's son is the source of the inquiry. I can only assume that Bela Rajbar is of limited capacity to

handle his affairs. If this is so then perhaps his memory is also failing.

On May 8, 1985, respondent purchased a bank draft from the Des Moines bank in which the Rajbar estate funds had previously been deposited. This draft was in the sum of $2021.24 payable to Bela Rajbar and the Consulate of Uruguay. The draft was distributed through the latter office to Bela Rajbar.

The Uruguayan Consulate, being dissatisfied with the seven-year delay in the distribution, pressed the Citizen's Aide Office for an explanation. Because respondent was an attorney that office referred the complaints to the Attorney Client Security and Disciplinary Commission. Investigation by client security auditors led to evidence of respondent's withdrawals from the account in 1977 and his admission of the true facts which had transpired.

Respondent's explanation to the Grievance Commission indicated that his conduct was motivated by financial pressures resulting from both his personal financial situation and that of his parents who relied on him for support. The commission found that respondent's conduct was in violation of Iowa Code of Professional Responsibility for Lawyers, DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 9–102(B)(4) (failure to deliver the funds which a client is entitled to receive). We agree with those findings.

The Grievance Commission also found that respondent at all times intended to repay the money, that he did so voluntarily, and that a suspension of license would constitute an appropriate discipline. Unfortunately, we cannot reconcile the discipline recommended with that which has been imposed in similar cases involving misappropriation of funds. Our disciplinary decisions have quite consistently held that such conduct normally calls for revocation of license rather than suspension. *Committee on Professional Ethics & Conduct v. O'Connor,* 329 N.W.2d 1 (Iowa 1983); *Committee on Professional Ethics & Conduct v. Pappas,* 313 N.W.2d 532 (Iowa 1981); *Committee on Professional Ethics & Conduct v. Rowe,* 225 N.W.2d 103 (Iowa 1975); *Committee on Professional Ethics & Conduct v. Sturek,* 209 N.W.2d 899 (Iowa 1973).

In many ways, the facts of the present case are similar to those involved in *Rowe,* 225 N.W.2d at 103, where we revoked the license of the offending attorney. The attorney's conduct in the present case is perhaps more aggravated than that presented in *Rowe* because it involved repeated attempts to impede the representatives of a foreign government from properly representing the interests of foreign citizens in this country. Considering the level of deceit involved, we conclude that the breaches of professional responsibility which have been established against respondent warrant revocation of his license. We accordingly order that respondent Frank Thomas's license to practice law in this state be revoked.

LICENSE REVOKED.