**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,**

v.

**William C. LUCAS, Respondent.**

No. 87–1137.

Supreme Court of Iowa.

Nov. 25, 1987.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for complainant.

William C. Lucas, Houston, Tex., pro se.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This lawyer disciplinary matter is before the court for de novo review and final disposition in accordance with Iowa Supreme Court Rule 118.10. The complaint filed by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) charged that William C. Lucas mishandled and converted client funds and failed to cooperate with the committee in its investigation of the matter. We have reviewed the record made before the Grievance Commission and concur with its findings and conclusion that respondent's license to practice law should be revoked.

The committee met no resistance in its task of proving Lucas' misconduct by a convincing preponderance of the evidence. *See Committee on Professional Ethics & Conduct v. Davidson,* 398 N.W.2d 856, 856 (Iowa 1987). Lucas has not yet responded to the committee or commission concerning the allegations against him. He did not reply to inquiries from the committee investigating complaints from clients. By the time the committee's formal complaint was filed, Lucas had moved to Houston, Texas. There he was duly served with original notice of the complaint accompanied by a request for admissions. He neither answered the complaint nor responded to the request for admissions. Later he was served with notice of when and where the commission hearing would be held, but neither he nor anyone on his behalf appeared at the appointed time and place. He has filed no brief or other response to the commission's decision.

I. By failing to cooperate with the committee, Lucas has hampered its efforts to administer our disciplinary rules. His inaction reflects disdain for the disciplinary system and constitutes misconduct. *See* EC 1–4 (requiring assistance to committees administering disciplinary rules); *Committee on Professional Ethics & Conduct v. Stienstra,* 390 N.W.2d 135, 137 (Iowa 1986).

II. By operation of law Lucas has admitted the allegations contained in the complaint. Iowa R.Civ.P. 127; *Committee on Professional Ethics & Conduct v. Paulos,* 410 N.W.2d 260, 261 (Iowa 1987); *see also Committee on Professional Ethics & Conduct v. Fugate,* 394 N.W.2d 408, 408 (Iowa 1986). Like the commission, we find these admissions, together with the evidence presented by the committee, establish that Lucas converted his clients' funds to his own use.

Lucas first came to the attention of the Client Security and Disciplinary Commission in the spring of 1985 during a routine audit of Lucas' accounts. *See* Iowa Supreme Court Rule 121.4. The auditor, who testified before the commission in this matter, discovered that Lucas was not maintaining adequate trust account records and that his financial records were generally in a state of disarray. After reviewing what records were available, the auditor secured an affidavit from Lucas affirming his understanding of client security fund rules and his promise to abide by them. On a return visit in January 1986, the auditor learned that Lucas had not converted his client trust account to one bearing interest. *See* DR 9–102(C).

This latter examination of Lucas' financial records was prompted by a complaint received by the committee concerning Lucas' handling of a real estate transaction in 1985. The auditor's testimony plus exhibits introduced before the commission make possible the following reconstruction of events pertinent to this complaint.

In 1985, Lucas represented the buyer in a real estate transaction and agreed to hold $7000 in escrow to cover a lien and pro rata taxes. He deposited these funds into his client trust account on October 24, 1985, bringing the balance to $7010. The next day Lucas wrote two checks to himself from this account: one for $1200 which he deposited in his office operating account and one for $300, of which he kept $175 in cash for himself and spent the remaining $125 for office expenses. Approximately two months later, Lucas attempted to satisfy the sellers' lien by issuing a check made payable to them for $5774.50 out of his client trust account. After the check was dishonored twice by the bank, the sellers complained to the committee. Bank records reveal that in January 1986 Lucas deposited sufficient currency from undetermined sources into the trust account to enable the check to clear the bank and satisfy the lien. However, Lucas has not paid the pro rata taxes comprising the balance of the escrowed $7000, nor has he returned any of the remaining escrow funds to his clients or reimbursed his client trust account.

In a separate incident a client gave Lucas $1000 as a retainer for his representation in a zoning matter. Since only part of this check represented fees earned by Lucas, the balance should have been deposited in his client trust account. *See* DR 9–102(A)(2). Bank deposits show that the entire $1000 was deposited in Lucas' office operating account and used for office expenses. Although the record is not entirely clear, it appears that Lucas thought the funds had been deposited in the trust account for he thereafter wrote himself checks for $850 and $200, presumably on the strength of the $1000 deposit.

Based on the facts outlined above, we agree with the commission's determination that Lucas violated the following provisions of the Iowa Code of Professional Responsibility for Lawyers: EC 1–5 (requiring high standards of professional conduct); DR 1–102(A)(1) (violating disciplinary rule); DR 1–102(A)(3) (prohibiting conduct involving moral turpitude); DR 1–102(A)(4) (prohibiting dishonesty, fraud, deceit or misrepresentation); DR 1–102(A)(5) (prohibiting conduct prejudicial to the administration of justice); DR 1–102(A)(6) (prohibiting conduct adversely affecting fitness to practice law); EC 9–5 (prohibiting commingling of client funds); EC 9–6 (requiring lawyers to uphold integrity of the profession and inspire confidence of clients and public); DR 9–102(A) (requiring that all client funds be deposited in client trust account); DR 9–102(B) (requiring records of client trust account funds); DR 9–102(C) (requiring maintenance of interest-bearing client trust account).

The committee proved by a convincing preponderance of the evidence that Lucas converted his clients' funds to his own use. Our prior decisions make clear that revocation is the appropriate sanction for such misconduct. *See e.g., Committee on Professional Ethics & Conduct v. Fugate,* 394 N.W.2d 408, 410 (Iowa 1986); *Committee on Professional Ethics & Conduct v. Thomas,* 392 N.W.2d 150, 152 (Iowa 1986); *Committee on Professional Ethics & Con-*

*duct v. O'Connor,* 329 N.W.2d 1, 4 (Iowa 1983); *Committee on Professional Ethics & Conduct v. Pappas,* 313 N.W.2d 532, 534 (Iowa 1981); *Committee on Professional Ethics & Conduct v. Rowe,* 225 N.W.2d 103, 104 (Iowa 1975). Accordingly, we order the revocation of respondent William C. Lucas' license to practice law in this state.

LICENSE REVOKED.