**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,**

v.

**James Edward BROMWELL, Respondent.**

No. 57521.

Supreme Court of Iowa.

Sept. 18, 1974.

Hedo M. Zacherle and Lee H. Gaudineer, Jr., Des Moines, for complainant.

James Edward Bromwell, pro se.

REYNOLDSON, Justice.

The Committee on Professional Ethics and Conduct of The Iowa State Bar Association lodged complaint against respondent James Edward Bromwell, asserting his willful failure to file federal and state income tax returns violated professional

standards of ethics and § 610.24, The Code. August 2, 1974, this court's Grievance Commission, fourth division, filed its report, incorporating certain findings and conclusions, and included its recommendation that respondent be suspended from practice of law in Iowa for a period of 18 months.

Respondent did not appear in person or by counsel in the Grievance Commission proceeding. The Commission had before it a written stipulation in which respondent conceded he had willfully and knowingly failed to file United States and Iowa income tax returns for the calendar years 1965 through 1972, although required by law to file for each of those years. Respondent was indicted in United States District Court in three separate counts for failing to file the required federal returns for 1968, 1969 and 1970. He pled guilty to Count II (without prejudice to his right to contest the validity of the gross income stated therein) and has been sentenced.

Respondent denies he owes income tax for any of the years in question. He is contesting an Internal Revenue Service report proposing deficiencies for the years 1968, 1969 and 1970. Neither the Commission nor this court makes any finding whether or not tax is owing for any of the above years, a matter which still stands unresolved between respondent and the taxing authorities.

I. Willfully failing to file an income tax return is a misdemeanor under both federal and Iowa law. See 26 U.S.C. § 7203; § 422.25(5), The Code. Here the respondent, in a consistent pattern spanning eight years, knowingly chose to disregard the mandate of these statutes.

During most of the time pertinent to this proceeding, Canon 29 of the canons of professional ethics applicable under our court rule 119 provided a lawyer " * * * should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice." Specifically, Canon 32 admonished a lawyer to " * * * observe and advise his client to observe the statute law, though until a statute shall have been construed and interpreted by competent adjudication, he is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent."

October 4, 1971, this court adopted the Iowa Code of Professional Responsibility for Lawyers. Canon 1 provides, "A Lawyer Should Assist in Maintaining the Integrity and Competence of the Legal Profession." Ethical consideration 1–5 cautions:

"A lawyer should maintain high standards of professional conduct and should encourage fellow lawyers to do likewise. He should be temperate and dignified, and he should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to the law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude."

Disciplinary rule 1–102 relating to the same canon states:

"(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

* * * * * *

(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

The issues in this disciplinary proceeding are whether respondent violated these ethical principles, and if so, what disciplinary penalty should be imposed.

■ II. Lay persons recognize that the bench and bar each have a grave and heavy responsibility in the administration of justice. The practicing lawyer assumes an important role both in and out of court. He or she is the first to pass on the merit, or lack of merit, of potential litigation as a client unfolds facts across a desk. The lawyer counsels on complex law requirements, and frequently is responsible for a client's decision to avoid possible law violations—including "white collar" crimes—until recently a fact little known and even less appreciated.

In the courtroom a lawyer is still more conspicuous as a vital force in our justice system. The importance of his function was well described more than 20 years ago by Dean Roscoe Pound:

"The average controversy is likely to have two sides, each believed in, in good faith by honest men. In order to decide such controversies satisfactorily the case of each party must be presented thoroughly and skillfully, so that things are put in their proper setting and the tribunal may review the whole case intelligently and come to a conclusion with assurance that nothing has been overlooked, nothing misapprehended, and nothing wrongly valued.

\*   \*   \*   \*   \*   \*

"\* \* \* [P]roper presentation of a case by a skilled advocate saves the time of courts and so public time and expense. It helps the court by sifting out the relevant facts in advance, putting them in logical order, working out their possible legal consequences, and narrowing the questions which the court must decide to the really crucial points. \* \* \* Experience has shown abundantly the waste involved in inexpert presentation of cases by laymen or by inexperienced or inept practitioners."—The Lawyer from Antiquity to Modern Times, pp. 25–26 (West Publishing Company, 1953)

It is in these ways that lawyers are inextricably and logically connected, in the public view, with the application of law and the protection of constitutional rights.

Consequently, there is no place in the justice system for persons who, through willful and serious law violations, tend to bring that system into public distrust and disrepute.

Pertinent here are the words of the Court of Appeals of Maryland in Maryland State Bar Association, Inc. v. Agnew, Md., 318 A.2d 811, 814 (1974) :

"Few vocations offer as great a spectrum for good and honorable works as does the legal profession. The attorney is entrusted with the life savings and investments of his clients. He becomes the guardian of the mentally deficient, and potential saviour for the accused. He is a fiduciary, a confidant, an advisor, and an advocate. However, the great privilege of serving in all of these capacities does not come without the concomitant responsibilities of truth, candor and honesty. In fact, it can be said that the presence of these virtues in members of the bar comprises a large portion of the fulcrum upon which the scales of justice rest. Consequently an attorney's character must remain beyond reproach."

Obedience to the law symbolizes respect for law. To the extent those licensed to operate the law's machinery knowingly and repeatedly violate essential statutes, there inexorably follows an intensified loss of lay persons' respect for law. This we can neither condone nor tolerate.

In prior decisions we have held willful failure by a member of the legal profession to file required income tax returns warrants professional disciplinary action. Committee on Professional Ethics & Con. v. Louden, 209 N.W.2d 359 (Iowa 1973); Iowa State Bar Association v. Kraschel, 260 Iowa 187, 148 N.W.2d 621 (1967). Those cases control the disposition of this case. We hold respondent has violated those ethical principles set out in Division I, above.

III. Some consideration should be given to the gravity of the offense. If it were now established respondent's motive in failing to file returns was to defraud his state and federal governments of tax revenues our problem would be simplified. We see no significant moral distinction between willfully cheating a client and willfully cheating the government. Maryland State Bar Association, Inc. v. Agnew, Md., 318 A.2d 811, 815 (1974); see Annot., 59 A.L.R.2d 1398 § 3, pp. 1401–1404. However, there is no present proof before us that defendant has in fact defrauded the state or federal government of any tax revenues.

Nonetheless, as we view it, one who is familiar with income tax laws and whose gross income exceeds the sum which triggers the filing requirement impliedly misrepresents that income when he willfully elects not to file. There is an element of deceit involved which, coupled with a deliberate election to violate statutes which foundation the economic structure of our government, impels the conclusion respondent has committed an offense involving moral turpitude. Other courts have so held, although we observe the facts of several decisions disclose other additional transgressions or at least established tax delinquencies. See In re Bennethum, 52 Del. 504, 161 A.2d 229 (1960); In re Bass, 49 Ill.2d 269, 274 N.E.2d 6 (1971); State v. Fitzgerald, 165 Neb. 212, 85 N.W.2d 323 (1957); In re Kafes, 17 N.J. 212, 111 A.2d 64 (1954); Rheb v. Bar Ass'n of Balti-more City, 186 Md. 200, 46 A.2d 289 (1946); In re MacLeod, 479 S.W.2d 443 (Mo.1972), cert. denied, 409 U.S. 979, 93 S.Ct. 312, 34 L.Ed.2d 243 (1972); In re Johns, 212 Or. 587, 321 P.2d 281 (1958); State Board of Law Examiners v. Holland, 494 P.2d 196 (Wyo.1972).

■ This court has the inherent constitutional power to license lawyers. It also has the concomitant duty to censure a lawyer or suspend or revoke his or her license to practice before the courts of Iowa when he or she has committed an offense which involves deceit, is prejudicial to the administration of justice, and adversely reflects on his or her fitness as a member of the bar. We suspend in this case, following the precedent of our own decisions and almost all the decisions from other jurisdictions, but we caution the future disposition of such cases may be revocation if this action fails as a deterrent. See In re Morris, 215 Or. 180, 182, 332 P.2d 885, 886 (1958).

It is ordered respondent be suspended indefinitely from the practice of law with leave to apply for reinstatement after expiration of 18 months from the date of this decision, providing he then furnishes the court satisfactory proof that he is at that time of good moral character and in all ways worthy of the right to practice law. See Supreme Court Rule 118.

Respondent's suspension shall apply to and include all facets of the ordinary law practice, including but not limited to examination of abstracts, consummation of real estate transactions, and preparation of deeds, buy and sell agreements, contracts, wills and tax returns. He shall immediately transfer to other counsel all legal matters, if any, in which he has been engaged or employed as counsel. Upon any application for reinstatement respondent also shall prove he has not practiced law or performed any of the aforesaid services

during the suspension period. See *Louden, supra,* 209 N.W.2d at 360.

All Justices concur, except REES and HARRIS, JJ., who take no part.