COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Timothy W. SHUMINSKY, Respondent.

No. 83–1330.

Supreme Court of Iowa.
Considered en banc.

Dec. 19, 1984.

Frank A. Comito, Des Moines, for complainant.

Daniel C. Galvin of O'Brien, Galvin, Kuehl & Mullin, Sioux City, for respondent.

REYNOLDSON, Chief Justice.

This is a review of the Grievance Commission's findings in an attorney disciplinary proceeding in which attorney Timothy W. Shuminsky was respondent. We suspend respondent's license to practice law indefinitely with no possibility of reinstatement for three months.

This proceeding arose out of criminal charges lodged against the respondent in Plymouth County. Respondent practiced law in Sioux City, and rented a house on a sixteen acre timbered tract about nine miles from his office. At first he lived on the property alone. Later Timothy B. Kelly moved in and shared the rental payments. Ultimately, the two purchased this real estate on contract. Adjoining land was owned by the Badgerow family and Carter Dennis.

The trial information against respondent, in evidence in this proceeding, discloses that on May 21, 1983, Tim Badgerow and his mother went onto the property owned by respondent and Kelly to find some horses that had been running loose. They noticed the partition fence between this property and the Dennis tract to be cut and laid back at a point where a definite path between the two parcels led down to the Dennis real estate. In a ravine on the latter tract the Badgerows discovered hundreds of marijuana plants in various stages of cultivation, some in pots, together with white pails of the same type Mrs. Badgerow earlier had observed respondent and Kelly carrying. The Badgerows reported these findings to the Plymouth County sheriff's department.

Law officers carried out a surveillance of the area on May 24 and 26. They observed Kelly, but not the respondent, going on the Dennis land to water the marijuana plants. May 26 the officers obtained a warrant to search the property of respondent and Kelly. That same day after Kelly discovered the law officers conducting the surveillance, they served the warrant.

The authorities seized an enormous quantity of marijuana, marijuana seedlings, seeds, fertilizer, instruction books on growing marijuana, starting trays, watering jugs, tools, and other paraphernalia, totaling sixty-five items in all. In respondent's room in the house, law officers found a small bag of marijuana, a pipe with marijuana residue, a bottle containing four amphetamine tablets and a receipt in respondent's name showing the purchase of "flats" from Mosher Greenhouse.

June 15, 1983, a trial information was filed against respondent in Plymouth County. Count I charged he unlawfully manu-

factured a controlled substance (marijuana) in violation of Iowa Code section 204.-401(1)(b); count II charged respondent unlawfully possessed a controlled substance (marijuana) with intent to deliver, a violation of Iowa Code section 204.401(1)(b).

October 5, 1983, the State and respondent entered into a written plea agreement, the State agreeing that the charges would be reduced to two serious misdemeanors: possession of four amphetamine tablets, a schedule II controlled substance; and possession of marijuana, a schedule I controlled substance, all in violation of Iowa Code section 204.401(3). Respondent agreed to plead guilty to these charges, and the State agreed that if penalties of confinement were imposed it would recommend such sentences be suspended, with probation.

On the same day, the charges were reduced and respondent entered guilty pleas. Respondent was sentenced to a $500 fine and six months' imprisonment on the marijuana charge, and a $1000 fine and six months' imprisonment on the amphetamine charge. The jail terms were suspended and respondent was placed on probation for one year.

December 22, 1983, the complainant committee filed its complaint against respondent with the Grievance Commission, charging him with violating Iowa Code sections 610.24(1), (3) and (4); Iowa Supreme Court Rule 118.10; and Iowa Code of Professional Responsibility for Lawyers, DR 1-102(A)(1), (3), (4), (5) and (6), EC 1-5 and EC 9-6.

With the parties' consent, only four lawyers served on the Grievance Commission at the hearing on the complaint. The county attorney for Plymouth County testified that although there was a clear path made by the garden tractor from the residence owned by respondent and Kelly to the plot of marijuana on the Dennis property, the State's evidence could not place respondent on the latter property. During the two and one-half days the area was under surveillance, respondent was not staying at his home, but did come by to pick up his mail.

This led to the plea bargain. Kelly pled guilty to the manufacture of a controlled substance, a class D felony. Neither Kelly nor the respondent cooperated with the county attorney with respect to the charges against the other.

The respondent testified he was a trial lawyer engaged in domestic relations, criminal and personal injury cases. He had prosecuted drug cases as assistant Woodbury County attorney, and defended persons charged with drug offenses after he left that office. Respondent testified that during the time in question he was separated from his wife. He slept part of the time in the homes of his girl friend and his parents. He denied any knowledge of the marijuana-growing activities on his premises, but admitted the marijuana and the pipe found in his room were his. Although respondent volunteered he had engaged in the social smoking of marijuana with friends following college, he quit in October 1982, when he "started dating a lady who doesn't smoke marijuana." Respondent testified the amphetamine pills were not his, but that he pled guilty to their possession because he knew they were in the house. The flats he purchased from Mosher Greenhouse, he asserted, were used in his separate gardening activities.

Two lawyers on the commission recommended a reprimand; two recommended a suspension of license "for a minimum period subject to the requirements of Court Rule 118.12."

I. We review the record made before the commission de novo. *Committee on Professional Ethics and Conduct v. Getscher*, 356 N.W.2d 557, 558 (Iowa 1984). We give respectful consideration to the commission's findings and recommendations although they are not binding on us. *Committee on Professional Ethics and Conduct v. Wollenzien*, 342 N.W.2d 490, 490 (Iowa 1984). If we find the complainant has established the charges by a convincing preponderance of the evidence, we impose an appropriate sanction, considering not only the respondent's fitness to practice law, but the need to deter others from

similar conduct and assure the public that courts will uphold the ethics of the legal profession. *Getscher*, 356 N.W.2d at 558; *Committee on Professional Ethics and Conduct v. Millen*, 357 N.W.2d 313, 315 (Iowa 1984). Complainant need not prove respondent was acting as a lawyer at the time of the alleged misconduct; lawyers do not shed their professional responsibility in their personal lives. *Millen*, 357 N.W.2d at 315; *see Committee on Professional Ethics and Conduct v. Gross*, 322 N.W.2d 82, 83 (Iowa 1982).

II. With the above principles in mind, we turn to those provisions of the Iowa Code of Professional Responsibility for Lawyers that are relevant in the circumstances disclosed in this record. Disciplinary Rule 1–102 provides that (A–1) a lawyer shall not violate a disciplinary rule, (A–3) engage in illegal conduct involving moral turpitude, (A–5) engage in conduct that is prejudicial to the administration of justice, or (A–6) engage in any other conduct that adversely reflects on his fitness to practice law.

■ The ethical considerations set forth in the canons not only illuminate the disciplinary rules; in Iowa a violation of an ethical consideration alone is sufficient to support discipline. *Millen*, 357 N.W.2d at 314–15; *Committee on Professional Ethics and Conduct v. Behnke*, 276 N.W.2d 838, 840 (Iowa), *appeal dismissed*, 444 U.S. 805, 100 S.Ct. 27, 62 L.Ed.2d 19 (1979). We closely scrutinize complainant's charges that respondent violated EC 1–5 and EC 9–6.

EC 1–5 provides:

A lawyer ... should refrain from all illegal and morally reprehensible conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude.

A portion of the above concept finds a place in EC 9–6:

Every lawyer owes a solemn duty ... to encourage respect for the law ....

In *Committee on Professional Ethics and Conduct v. Bromwell*, 221 N.W.2d 777 (Iowa 1974), we disciplined a lawyer for willfully failing to file income tax returns, then a misdemeanor under both federal and state laws. *See* 26 U.S.C. § 7203 (1970); Iowa Code § 422.25(5) (1973). We there wrote:

Obedience to the law symbolizes respect for law. To the extent those licensed to operate the law's machinery knowingly and repeatedly violate essential statutes, there inexorably follows an intensified loss of lay persons' respect for law. This we can neither condone nor tolerate.

221 N.W.2d at 779.

■ III. In *Committee on Professional Ethics and Conduct v. Hanson*, 244 N.W.2d 822, 824 (Iowa 1976), we held Hanson's possession of marijuana violated DR 1–102(A)(6). We conclude that precedent applies here, and that respondent's convictions of two serious misdemeanors with respect to marijuana and amphetamine possession also violate EC 1–5 and EC 9–6. *See Committee on Professional Ethics and Conduct v. Christoffers*, 348 N.W.2d 227, 229–30 (Iowa 1984) ("[W]e find [respondent] realized that accepting gifts was not in keeping with at least the spirit of the Black Lung Benefits Act.... At the very least, his acts violated EC 1–5 and EC 9–6, a sufficient basis upon which to rest our decision.").

The substances that generated these criminal charges were, under the circumstances, contraband, subject to seizure. *See* Iowa Code § 204.505. This legislative judgment distinguishes these offenses from one involving alcohol, a substance about which the legislature, apparently following prevailing moral sentiment, has expressed a different public policy. *See In re Rabideau*, 102 Wis.2d 16, 29, 306 N.W.2d 1, 8 (1981).

■ At the disciplinary hearing, respondent testified he has served his clients well and he has contributed legal services to

Native Americans in both Iowa and Nebraska. It is commendable that respondent is conforming to other provisions of the ethics code. *See* EC 6–1 ("[A] lawyer should act with competence and proper care in representing clients."); EC 2–27 ("Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged."). This conformance, of course, does not mitigate the seriousness of respondent's violation of Iowa's criminal laws. *See Committee on Professional Ethics and Conduct v. Kelly,* 250 N.W.2d 388 (Iowa 1976).

▪ We hold respondent's license to practice law should be suspended indefinitely with no possibility of reinstatement for three months. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12. Upon application for reinstatement, respondent shall have the burden to prove that he has not practiced law during the period of suspension and that he meets the requirements of supreme court rule 118.13.

LICENSE SUSPENDED.

All Justices concur except WOLLE, J., who takes no part.