COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,

v.

**John J. CODY, Jr., Respondent.**

No. 87–720.

Supreme Court of Iowa.

Sept. 23, 1987.

James E. Gritzner of Nyemaster, Goode, McLaughlin, Emery & O'Brien, and Norman G. Bastemeyer, Des Moines, for complainant.

John J. Cody, Jr., Oak Brook, Ill., pro se.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ, and LAVORATO, JJ.

LAVORATO, Justice.

This attorney disciplinary proceeding arises out of a guilty plea by the respondent, John J. Cody, Jr., to two counts of theft in the third degree in connection with two insufficient fund checks he executed in July and September 1984. The Grievance Commission found that Cody violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(1) (violating disciplinary rule), (3) (engaging in illegal conduct involving moral turpitude), (4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), (6) (engaging in conduct adversely reflecting on fitness to practice), and EC 1–5 (failing to maintain high standards of professional conduct and failing to refrain from illegal and morally rep-

rehensible conduct). The commission recommended that Cody's license to practice law be suspended for a period of two and one-half years and that such suspension run from December 23, 1985, the date we temporarily suspended Cody's license because of his guilty plea to the two theft charges, *see* Iowa Sup.Ct.R. 118.14.

Upon our de novo review, *see* Iowa Sup. Ct.R. 118.10, we agree with the commission that Cody was guilty of several ethical violations regarding the two insufficient fund checks and with its recommendation.

Cody elected not to appear at the hearing before the commission, but he did write a letter in explanation of his conduct which the commission considered. The committee introduced a request for admissions that included in substance all of the factual allegations of the complaint filed against Cody. Cody did not answer the request. Consequently, all matters covered in the request are deemed admitted, and the commission had a right to rely on the admissions in reaching its decision. *Committee on Professional Ethics & Conduct v. McKey*, 343 N.W.2d 489, 489 (Iowa 1984); *see also* Iowa R.Civ.P. 127, 128.

At the time Cody wrote the two checks, he was practicing law in Dubuque and was involved in the operation of a small business known as the C.F. Cody Company. In connection with that business, Cody maintained a checking account at the First Federal Savings Bank in Dubuque. He was the only one authorized to sign checks on this account.

Ronway Wholesale Enterprises of Broadview, Illinois, a wholesale dealer of office supplies, began selling supplies to the Cody Company in early 1984 on open account. Because of a poor payment record, Ronway switched the Cody Company's status to "collect on delivery" in July 1984.

On July 24 and 25, 1984, Ronway shipped supplies to the Cody Company through UPS, valued at $345.69. Cody sent Ronway a check for $609 in payment for the supplies, shipping costs, and the open account.

On September 4 and 5, 1984, Ronway again shipped supplies to the Cody Compa-

ny through UPS. These supplies were valued at $717.64. In payment for the supplies and shipping costs, Cody sent Ronway a check for $658.88.

When both checks were presented for payment to the First Federal Savings Bank, the bank dishonored them because of insufficient funds on deposit. The Cody Company's account at the bank showed numerous prior insufficient fund checks; the bank notified Cody about these insufficient fund checks and charged him ten dollars per check.

In connection with the two recently dishonored checks, Cody was charged with two counts of theft in the third degree under Iowa Code sections 714.1(6) and 714.-2(3). He entered a plea of guilty to both counts on July 8, 1985. By his plea, Cody admitted all the essential elements of the offenses. *See Committee on Professional Ethics & Conduct v. Christoffers,* 348 N.W.2d 227, 229 (Iowa 1984). Theft in the third degree is an aggravated misdemeanor. Iowa Code § 714.2(3).[1] On the same date, the court deferred judgment for two years, *see* Iowa Code §§ 901.5(1), 907.3, and placed Cody on probation during that time. The court also ordered Cody to perform one hundred hours of community service and to make restitution to Ronway for sums owing to them.

We have previously summarized the principles for review of attorney disciplinary actions:

[Our review of] the record made before the commission [is] de novo. We give respectful consideration to the commission's findings and recommendations although they are not binding on us. If we find the complainant has established the charges by a convincing preponderance of the evidence, we impose an appropriate sanction, considering not only the respondent's fitness to practice law, but the need to deter others from similar conduct and assure the public that courts will uphold the ethics of the legal profession. Complainant need not prove respondent was acting as a lawyer at the time of the alleged misconduct; lawyers do not shed their professional responsibility in their personal lives.

*Committee on Professional Ethics & Conduct v. Shuminsky,* 359 N.W.2d 442, 444–45 (Iowa 1984) (citations omitted).

When applied in the context of attorney misconduct, the term "moral turpitude" has been held to connote fraudulent or dishonest intent. *See, e.g., Committee on Professional Ethics & Conduct v. Pappas,* 313 N.W.2d 532, 534 (Iowa 1981) (first degree theft); *Committee on Professional Ethics & Conduct v. Bromwell,* 221 N.W.2d 777, 780 (Iowa 1974) (failure to file income tax returns); *Committee on Professional Ethics & Conduct v. Kraschel,* 260 Iowa 187, 197, 148 N.W.2d 621, 627 (1967); *accord In re Hallinan,* 43 Cal.2d 243, 247, 272 P.2d 768, 771 (1954); *In re Willcher,* 447 A.2d 1198, 1200 (D.C.1982) (unlawful solicitation of money from indigent defendant whom attorney was appointed to represent); *Kentucky State Bar Ass'n v. Scott,* 409 S.W.2d 293, 294 (Ky.1966) (grand larceny); *Attorney Grievance Comm'n v. Reamer,* 281 Md. 323, 326–28, 379 A.2d 171, 173–74 (1977) (mail fraud); *Attorney Grievance Comm'n v. Andresen,* 281 Md. 152, 157–58, 379 A.2d 159, 162 (1977) (obtaining money under false pretenses); 7 C.J.S. *Attorney & Client* § 71, at 961–62 (1980).

In *State v. Smith,* 300 N.W.2d 90, 92 (Iowa 1981), we held that theft by check under section 714.1(6) is established when something of value is obtained by deception. Deception, we said, "is established by the obtaining of something of value through the use of a check which the perpetrator knows is worthless. This guilty knowledge is the mens rea of the offense." *Smith,* 300 N.W.2d at 92–93 (ci-

---

1. The penalty for an aggravated misdemeanor is set out in section 903.1(2), which provides,

   When a person is convicted of an aggravated misdemeanor, and a specific penalty is not provided for, the maximum penalty shall be imprisonment not to exceed two years, or a fine not to exceed five thousand dollars, or both. When a judgment of conviction of an aggravated misdemeanor is entered against any person and the court imposes a sentence of confinement for a period of more than one year the term shall be an indeterminate term.

tation omitted). Clearly, the deception or guilty knowledge required for conviction under section 714.1(6) equates with the fraudulent or dishonest intent elements of moral turpitude proscribed in DR 1–102(A)(3) and EC 1–5, and with the dishonest element proscribed by DR 1–102(A)(4).

■ Thus, we agree with the commission's finding that Cody was guilty of violating DR 1–102(A)(3), (4), and EC 1–5. Because he violated the disciplinary rules, he also was, as the commission correctly found, in violation of DR 1–102(A)(1). His conduct, as the commission also correctly determined, adversely reflected on his fitness to practice law in violation of DR 1–102(A)(6).

In his letter to the commission Cody attempted to explain his conduct:

There were many things which I would have liked to have said to the committee. Perhaps not in mitigation for what it is alleged I have done, but rather as an explanation. It is very difficult to try to explain in a letter why things happened. Suffice it to say that we were operating a small business in an economically difficult period. Our finances as well as the finances of many of our customers were not in the best of conditions. It would be fair to say that we were on the razor's edge financially for a great deal of the time. In such a situation different people react differently. Some quit, some fight on. I chose to fight on, but in doing so I made errors. The greatest of which was in paying vendors. There were times checks were written and there were not funds in the bank to cover these checks. But it was anticipated that there would be deposits made before the checks were ever presented for payment. This was not done with the intent to defraud anyone. And all checks were ultimately paid. It was my mistake to continue under such circumstances and admittedly now, it was not the right thing to do.

Notwithstanding Cody's claim that he did not intend to defraud anyone, the simple truth is that he was dishonest in his business dealings with Ronway. Cody tendered the two checks in question to Ronway knowing full well that he did not have sufficient funds on deposit to cover them. In doing so, Cody obtained supplies upon the implied false representation to Ronway that sufficient funds were on deposit to cover the checks.

Moreover, by Cody's own admission, this was not a case of an isolated incident. The minutes of testimony attached to the trial information reflect that a bookkeeping employee of Cody's bank was prepared to testify that Cody's account showed numerous prior insufficient fund checks and that Cody was notified about them.

Cody compounded his illegal conduct by not paying the checks immediately upon receiving Ronway's written demand for payment in October 1984. Although the checks were written in July and September 1984, they still had not been paid at the time the trial information was filed on April 24, 1985.

The circumstances of this case bring to mind what we said in the context of a lawyer disciplinary case involving a failure to file income tax returns:

Obedience to the law symbolizes respect for law. To the extent those licensed to operate the law's machinery knowingly and repeatedly violate essential statutes, there inexorably follows an intensified loss of lay persons' respect for law. This we can neither condone nor tolerate.

*Committee on Professional Ethics & Conduct v. Bromwell,* 221 N.W.2d 777, 779 (Iowa 1974).

Cody wrote, in his letter to the commission, about his heavy involvement in community, church, and political activities. He was named the community's outstanding young man by the Jaycees, served several years on his parish council, and was precinct committeeman and vice-chairman of his political party's central committee. He pointed out that before this incident he had never broken the law and had tried to lead a decent life.

No doubt the district court took these matters into consideration in granting Cody a deferred judgment. However, we are

now not concerned with the question of the appropriate punishment for a crime. The matters that now concern us are Cody's fitness to practice law, the need to deter others from similar conduct, and our assurance to the public that the courts will maintain the ethics of our profession. Moreover, the fact that Cody may have led an exemplary life in the past and was involved in community, church, and political activities does not mitigate the seriousness of his violation of Iowa criminal law. *See Shuminsky*, 359 N.W.2d at 446; *Committee on Professional Ethics & Conduct v. Kelly*, 250 N.W.2d 388, 388 (Iowa 1976).

We conclude that Cody's license to practice law should be suspended indefinitely and he should not be permitted to apply for reinstatement for a period of not less than two and one-half years from December 23, 1985. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12. Upon application for reinstatement, Cody shall have the burden to prove he has not practiced law during the period of suspension and that he meets the requirements of Supreme Court Rule 118.-13. Costs are assessed to Cody pursuant to Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.