COMMITTEE ON PROFESSIONAL ETH-
ICS AND CONDUCT OF the IOWA
STATE BAR ASSOCIATION, Complain-
ant,

v.

Lloyd E. HUMPHREYS, Respondent.

No. 94–1099.

Supreme Court of Iowa.

Nov. 23, 1994.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Lloyd E. Humphreys, Dallas, TX, pro se.

L. Charles Humphreys, Dallas, TX, for respondent.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

LARSON, Justice.

In December 1991, this court temporarily suspended the license of Lloyd E. Humphreys following his conviction on five counts of federal income tax violations. *See* Ct.R. 118.14 (temporary suspension on plea of guilty or conviction). Our Grievance Commission conducted a hearing on a complaint filed by the Committee on Professional Ethics and Conduct and recommended a five-year suspension, giving the respondent credit for the time he had spent under the temporary suspension of 1991. On our review of the findings and recommendation of the Commission, pursuant to Court Rule 118.10, we order the respondent's license revoked.

The Committee charged four grounds for discipline under our Code of Professional Responsibility: (1) committing federal income tax violations (four felonies and one

Class A misdemeanor under federal law), (2) commingling funds with clients', (3) improperly advancing money to a client, and (4) improperly entering into business with a client without full disclosures.

■ Our review is de novo. Ct.R. 118.11. The burden is on the Committee, as complainant, to prove the violations by a convincing preponderance of the evidence, a standard between a mere preponderance of the evidence and that beyond a reasonable doubt. *See Committee on Professional Ethics & Conduct v. Hutcheson,* 471 N.W.2d 788, 789 (Iowa 1991); *Committee on Professional Ethics & Conduct v. Hurd,* 375 N.W.2d 239, 246 (Iowa 1985).

### I. *The Income Tax Violations.*

The Committee charged that respondent's tax convictions violated DR 1–102(A)(3) and (4) of the Code of Professional Responsibility (lawyer shall not engage in illegal conduct involving moral turpitude or other conduct involving dishonesty, fraud, deceit, or misrepresentation).

The respondent was convicted in a jury trial in federal court of four counts of willful tax evasion under 26 U.S.C. § 7201 (felonies) and one count of willfully filing a false tax return in violation of 26 U.S.C. § 7207 (a Class A misdemeanor). This conviction was affirmed by the Eighth Circuit. *See United States v. Humphreys,* 982 F.2d 254 (8th Cir. 1992).

■ The three elements of federal income tax evasion are: (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax owed. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882, 888 (1965). The elements of the crime of willfully filing a false tax return are: (1) willfulness, and (2) filing a return known to be false or fraudulent. *Id.* at 352, 85 S.Ct. at 1010, 13 L.Ed.2d at 889.

■ Humphreys continues to insist that he was not guilty of the income tax charges. However, we deem his conviction and its affirmance on appeal as conclusive evidence of guilt. Under Iowa Code section 602.10122,

[t]he following are sufficient causes for revocation or suspension [of an attorney's license]:

1. When the attorney has been convicted of a felony. *The record of conviction is conclusive evidence.*

(Emphasis added.)

The Texas Supreme Court has recently discussed (in its disciplinary proceedings against Humphreys) the conclusive effect of a conviction, as well as Humphreys' claim that income tax violations do not involve moral turpitude. After a lengthy discussion of other states' disciplinary cases, the Texas court concluded that (1) income tax evasion does involve moral turpitude, and (2) conviction of the offense is conclusive evidence of guilt. *In re Lloyd E. Humphreys,* 880 S.W.2d 402, 408 (Tex.1994) (conclusiveness based on disciplinary rule, similar to Iowa Code section 602.10122, and principles of full faith and credit).

■ Our cases have agreed; income tax violations involve "moral turpitude." *See Committee on Professional Ethics & Conduct v. Baudino,* 452 N.W.2d 455, 458–59 (Iowa 1990); *Committee on Professional Ethics & Conduct v. McMillen,* 449 N.W.2d 339, 340 (Iowa 1989); *Committee on Professional Ethics & Conduct v. Crawford,* 351 N.W.2d 530, 532 (Iowa 1984). We continue to hold that view.

We conclude that the Committee has proved by the requisite standard that the respondent was guilty of the income tax violations and the applicable disciplinary rules.

### II. *Commingling of Accounts.*

The Committee charged that on several occasions the respondent had commingled his clients' funds in his own bank account. Our rules require that client funds be maintained in an identifiable client trust account.

All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, except retainer fees paid on a regular and continuing basis, shall be deposited in one or more identifiable interest-bearing trust accounts maintained as set forth in DR 9–102(C). All such funds re-

ceived from clients for matters arising out of the practice of law in Iowa, as the term "practice of law" is employed in court rule 121, shall be deposited only in trust accounts located in Iowa. No funds belonging to the lawyer or law firm shall be deposited in trust accounts except as follows....

DR 9–102(A).

The respondent admits that several clients' funds were involved in the commingling, but he claims that his mother, who was employed in his office, was responsible. We have held that commingling of clients' funds is an absolute offense, one that does not lend itself to the defense that the lawyer's employees were responsible. *Committee on Professional Ethics & Conduct v. Davidson*, 398 N.W.2d 856, 859 (Iowa 1987).

We believe that the Committee sufficiently established this count also.

### III. *Advancement of Funds.*

The Committee charges that the respondent improperly advanced $1000 to a client in a workers' compensation case, then misrepresented to the client that the money came from a local bank. The charge is that the advancement of money for nonlitigation expenses is a violation of DR 5–103(B) and that misrepresentation to a client about the source of the loan violates DR 1–102(A)(4).

The respondent's client needed money to pay medical expenses (unrelated to the workers' compensation claim), according to the respondent. The respondent loaned him $1000 and told him that it had come from a local bank.

> While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to a client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

DR 5–103(B).

DR 1–102(A)(4) provides that a lawyer shall not "[e]ngage in conduct involving dis-

honesty, fraud, deceit, or misrepresentation." The complaint alleges that the misrepresentation about the source of the loan violated this rule.

The respondent does not contest the Committee's finding that he loaned money to the client for nonlitigation expenses. He claims that his client was in serious financial need, and the loan was not made for the purpose of obtaining employment for the workers' compensation case. (At the time the loan was made, the respondent was already representing the client.)

Disciplinary rule 5–103(B), however, makes it clear that only under very limited circumstances may a lawyer loan money to a client. In *Committee on Professional Ethics & Conduct v. Bitter*, 279 N.W.2d 521 (Iowa 1979), the respondent contended that "[t]he act was done entirely for charitable and humanitarian reasons" because the clients "were in extremely dire financial need." *Id.* at 523.

We nevertheless concluded that this conduct violated DR 5–103(A).

> The rule proscribing such acts ... makes no exceptions for these factors. It provides that the rule is intended to prevent an attorney's procuring an interest in a legal matter by advancements of money or the like. The rule does not require proof of such intent or effect, only that the conditions exist where such results might ... give rise to reasonable speculation that [the attorney] has thus [inserted] himself into the legal affairs of his potential clients.

*Bitter*, 279 N.W.2d at 523.

While this violation by the respondent by itself does not constitute a serious infraction, the evidence supports the Committee's conclusion that the rules were violated.

### IV. *The Conflict of Interest.*

The last count of the complaint charges a conflict of interest in the respondent's business dealings with a client. In 1981, the respondent drafted the organizational documents for a corporation called IEM, Inc. The respondent received stock in the corporation in lieu of attorney fees.

The respondent and James Smith were the sole shareholders, officers, and directors of the corporation with Smith owning the majority of the stock. The bylaws drafted by the respondent, in effect, provided that (1) neither Smith nor the respondent could be voted out as director without the vote of 100% of the shares, (2) compensation of officers and directors required the vote of the majority of the directors, (3) the election or removal of officers required the vote of the two directors, and (4) both directors would have to vote on incurring corporate debt. The effect of the corporate documents was to secure the respondent's position in the corporation and make it impossible for the owner of the majority of the stock to act in any of the above respects without Humphreys' concurrence.

Additionally, the corporation borrowed several thousand dollars from the respondent. In 1982, the respondent loaned the corporation $4000. The corporation repaid the loan in two months with $500 interest. The respondent in November 1982 loaned $16,808 to the corporation, and the loan was repaid within twelve days, together with $1060 interest. In December 1982, the respondent loaned the corporation $8000, and the corporation repaid the loan in less than two months with $2178 interest. During this entire period, the respondent acted as attorney for the corporation.

Disciplinary rule 5–101(A) provides:

> Except with the consent of the client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests.

In connection with business transactions with a client, DR 5–104(A) provides:

> A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

We have said in connection with a similar matter that an attorney must disclose not only the attorney's adverse interest, but also the effect it will have on the exercise of his professional judgment. *Committee on Professional Ethics & Conduct v. Mershon*, 316 N.W.2d 895, 899 (Iowa 1982).

■ There was no evidence that the respondent advised the other shareholder about the possibility of a conflict of interest. An attorney and his client have conflicting interests in a transaction in which the attorney is given corporate stock or other investments in exchange for legal services. *Mershon*, 316 N.W.2d at 898. The respondent eventually received a twenty-five percent interest in the corporation with no cash contribution.

In addition, the parties have divergent interests when the attorney is a creditor of the corporation. *See Committee on Professional Ethics & Conduct v. Schooler*, 482 N.W.2d 426, 427 (Iowa 1992).

We agree with the Commission that the Committee adequately established violation of DR 5–101(A) and DR 5–104(A).

V. *Disposition.*

■ Under Iowa Code section 602.10122(1), a sanction of revocation or suspension is appropriate in the case of an attorney who has committed a felony. In fact, we have revoked in cases involving criminal convictions. *See, e.g., Committee on Professional Ethics & Conduct v. Kaufman*, 515 N.W.2d 28, 31 (Iowa 1994) (felony conviction on drug offenses); *Committee on Professional Ethics & Conduct v. Green*, 285 N.W.2d 17, 18 (Iowa 1979) (conviction on serious misdemeanor charges in drug case). In this case, the respondent committed four felonies and a serious misdemeanor, as well as the other infractions.

We have given respectful consideration to the recommendation of the Commission that the respondent's license only be suspended. But, we believe a combination of offenses that involve five criminal convictions (including four felonies), commingling, and improper business relationships with a client compels a revocation.

We therefore revoke the respondent's license to practice law. Costs of this proceeding shall be taxed to the respondent pursuant to Court Rule 118.22.

**LICENSE REVOKED.**