**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**John ROMEO, Sr., Respondent.**

**No. 96–1112.**

Supreme Court of Iowa.

Oct. 23, 1996.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

D. William Thomas, Des Moines, and John Romeo, Sr., West Des Moines, for respondent.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

This lawyer disciplinary matter is before us for de novo review in accordance with Iowa Supreme Court rule 118.10. The respondent, John Romeo, Sr., stands convicted of two counts of record tampering in violation of Iowa Code section 715A.5 (1993).[1] These convictions led the Iowa Supreme Court Board of Professional Ethics and Conduct to charge Romeo with violating the following sections of the Iowa Code of Professional Responsibility: DR 1–102(A)(1), (3), (4), (5), and (6),[2] and DR 7–102(A)(6) and (7).[3] In admissions filed with the board, and in his testimony before the grievance commission, Romeo conceded his conduct violated these canons. In mitigation of any sanction, however, he offered his own explanation of the facts surrounding the crime as well as evidence bearing on his fitness to practice law.

■ The grievance commission concluded that Romeo violated the code of professional responsibility as charged by the board, and recommended a suspension of not less than three years. We concur in the commission's findings and its recommended sanction.

I. The facts surrounding Romeo's criminal activity are recounted in *State v. Romeo*, 542 N.W.2d 543 (Iowa 1996), and will be summarized only briefly here. An investigation into a theft ring led police to one of Romeo's clients, Frank Bode. Bode was involved in buying and selling two stolen skid loaders valued in excess of $20,000 each.

*Romeo*, 542 N.W.2d at 546–47. Romeo agreed to meet with Bode, and the two men who had stolen the equipment, to prepare bills of sale. The State offered testimony that Romeo wanted to find a "solution to get the heat off of his client," who was on probation. *Id.* at 546. To cover up Bode's role as a "fence," Romeo and the others agreed on a plan to make false receipts. *Id.*

Romeo, who did not testify at his criminal trial, offered the grievance commission a version of the facts that reflected more favorably on him. He insisted that he was unaware at the time he drafted the receipts that the equipment was stolen. He conceded, however, that he harbored doubts about Bode's business associates. He had previously defended Bode on a larceny charge. Thus he claimed the documents were drafted merely in an effort to protect his client.

Romeo nevertheless admitted that a receipt ultimately surrendered to the police was falsified in the following respect: the signature shown on the document's "witness" line belonged to one of Romeo's divorce clients, not the woman who would have witnessed the signatures. Again, Romeo denied any criminal intent to deceive or mislead officials. He explained that upon agreeing to relinquish the receipt to the police, he realized the "witness" line was blank. Feeling responsible for this omission, he obtained a signature from the nearest available person in order to get his client out of a jam. He readily concedes that implicating one unsus-

---

1. The section provides:
    A person commits an aggravated misdemeanor if, knowing that the person has no privilege to do so, the person falsifies, destroys, removes, or conceals a writing or record, with the intent to deceive or injure anyone or to conceal any wrongdoing.
    Iowa Code § 715A.5.

2. DR 1–102. MISCONDUCT
    (A) A lawyer shall not:
    (1) Violate a disciplinary rule.
    . . . .
    (3) Engage in illegal conduct involving moral turpitude.
    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

    (5) Engage in conduct that is prejudicial to the administration of justice.
    (6) Engage in any other conduct that adversely reflects on the fitness to practice law.

3. DR 7–102. REPRESENTING A CLIENT WITHIN THE BOUNDS OF THE LAW
    (A) In the representation of a client, a lawyer shall not:
    . . . .
    (6) Participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false.
    (7) Counsel or assist a client in conduct that the lawyer knows to be illegal or fraudulent.

pecting client in wrongdoing to save another is patently unethical.

■ II. Our court rules permit license revocation or suspension for any lawyer convicted of a misdemeanor "involving moral turpitude." Iowa Sup.Ct. R. 118.10. In relation to lawyer conduct, the term "moral turpitude" connotes behavior involving "fraudulent or dishonest intent." *Committee on Professional Ethics & Conduct v. Cody*, 412 N.W.2d 637, 639 (Iowa 1987); *accord Committee on Professional Ethics & Conduct v. Humphreys*, 524 N.W.2d 396, 397 (Iowa 1994) (willful tax evasion involves moral turpitude); *Committee on Professional Ethics & Conduct v. Rabe*, 284 N.W.2d 234, 236 (Iowa 1979) ("Fourth-degree theft, a serious misdemeanor, involves moral turpitude."). The crime for which Romeo stands convicted requires proof that a writing or record has been falsified "with the intent to deceive ... or to conceal any wrongdoing." Iowa Code § 715A.5. Thus the conviction, on its face, involves moral turpitude.

In the case of a felony, a record of conviction would constitute "conclusive evidence" warranting revocation or suspension. Iowa Code § 602.10122; *Humphreys*, 524 N.W.2d at 397. Similarly, a recent amendment to our court rules provides that principles of issue preclusion apply in a lawyer disciplinary case to bar the relitigation of issues resolved in a prior *civil* proceeding where the burden of proof was greater than a mere preponderance of the evidence. Iowa Sup. Ct. R. 118.7; *see Iowa Supreme Ct. Bd. of Professional Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 871 (Iowa 1996). Neither section 602.10122 nor court rule 118.7, however, speaks directly to the case before us—a judgment in a *criminal* case involving a *misdemeanor*, not a felony. We are nevertheless disinclined to second-guess the jury's finding, affirmed on appeal, that Romeo knowingly engaged in false and deceitful conduct.

We are satisfied from the record before us that Romeo violated DR 1–102(A)(3) and (4), as well as DR 7–102(A)(6) and (7). By his own admission, his actions were prejudicial to the administration of justice and adversely reflected on his fitness to practice law. *See* DR 1–102(A)(1), (5), (6).

III. Our task is to determine an appropriate sanction for Romeo's ethical breach. For conduct involving false testimony or falsified documents, sanctions have ranged from reprimand to disbarment, depending on the surrounding circumstances and the lawyer's prior reputation for honesty and integrity. *See generally Committee on Professional Ethics & Conduct v. Wenger*, 469 N.W.2d 678, 679–80 (Iowa 1991) (digesting pertinent cases and sanctions). Here the commission settled on a three-year suspension. That recommendation is entitled to our respectful consideration, although we are not bound by it. *Id.* at 679.

We are obliged to consider both aggravating and mitigating circumstances. *Id.* at 680. Romeo's principal failing—employing deceit to advance a client's interest—is regarded as misconduct of the most serious sort:

Fundamental honesty is the base line and mandatory requirement to serve in the legal profession. The whole structure of ethical standards is derived from the paramount need for lawyers to be trustworthy. The court system and the public we serve are damaged when our officers play fast and loose with the truth. The damage occurs without regard to whether misleading conduct is motivated by the client's interest or the lawyer's own.

*Committee on Professional Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453 (Iowa 1990). Further aggravating the matter is the fact that Romeo does not reach this court with a sterling record. We publicly reprimanded him in 1992 for sending a letter that threatened criminal charges solely to obtain an advantage in a civil matter, a violation of DR 7–105(A). His background also reveals a 1992 conviction for simple misdemeanor theft.

By way of mitigation, Romeo offered proof that he suffers from a variety of debilitating illnesses including diabetes, hyperthyroidism, and heart disease. It appears that the stress of the criminal prosecution, and these disciplinary proceedings, has worsened those conditions. Romeo highlights this proof, not to

justify his behavior,[4] but to emphasize the penalties already paid by him for his misconduct.

Under the circumstances, we believe the suspension recommended by the commission adequately accounts for the gravity of Romeo's offense, the consequences he has already suffered, his ill health, and the likelihood that such a sanction will deter others like Romeo from engaging in such unprofessional conduct. We therefore suspend John Romeo, Sr.'s license to practice law in this state indefinitely, with no possibility of reinstatement for three years from the date of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Sup. Ct. R. 118.12. Costs shall be paid by the respondent.

**LICENSE SUSPENDED.**

---

4. Romeo does claim that his conviction for shoplifting two packs of cigarettes was precipitated by an insulin reaction that left him disoriented and unaware of his conduct. He nevertheless pled guilty to the charge.